EULA S. BOWES v. MELLIE LEWIS BOWES

No. 17

(Filed 6 May 1975)

1. **Divorce and Alimony § 17— alimony — earning capacity — bad faith effort — insufficiency of evidence**

   Plaintiff's evidence was insufficient to support a finding that defendant husband is failing to exercise his capacity to earn because of a disregard of his marital obligation to provide reasonable support for plaintiff, and an award of alimony based on defendant's earning capacity rather than his actual earnings must be set aside, where the evidence tended to show only that defendant abandoned plaintiff, defendant earned in excess of $16,000 as a grading contractor in 1969, defendant incorporated his business in 1970 and placed himself on a weekly salary of $156.58, defendant earned $6,775.14 in 1970, defendant authorized a corporate loan of $2,360 to his son in 1973 for the son to make a down payment on a house, and defendant and his minor daughter in 1973 made a seven-day trip to the beach, a four-day trip to Canada, and a one-week trip to Las Vegas.

2. **Divorce and Alimony § 17— alimony — failure to exercise earning capacity — prima facie showing — burden of proof**

   Even if plaintiff made a *prima facie* showing that defendant intentionally failed to exercise his earning capacity because of a disregard of his marital obligation to provide reasonable support for plaintiff, the burden did not then shift to defendant to offer explanation of his circumstances and negate plaintiff's showing since plaintiff had the burden of proof throughout the case.

   Justice HUSKINS dissenting.

   Chief Justice SHARP joins in the dissenting opinion.

ON *certiorari* to review decision of the Court of Appeals reported in 23 N.C. App. 70, 208 S.E. 2d 270 (1974) (opinion by Campbell, J., Parker and Vaughn, J.J., concurring), which

vacated the judgment entered by *Clark, D.J.,* at the 28 January 1974 Session of ROCKINGHAM County District Court and remanded the cause for further proceedings in accordance with its opinion.

Plaintiff-wife instituted this action on 28 September 1971 for divorce from bed and board, permanent alimony, alimony *pendente lite,* custody of a minor daughter, child support, and reasonable attorney's fees. The issue of abandonment was heard by a jury at the 28 August 1972 Civil Session of Rockingham County District Court. Upon a jury verdict that defendant-husband had abandoned plaintiff, District Judge Clark entered judgment awarding plaintiff a divorce from bed and board. In this judgment, District Judge Clark also ordered "that the matters of child custody, child support, permanent alimony and attorney fees be and are hereby retained for determination upon further hearing at this Session of Rockingham District Court."

On 1 September 1972 defendant filed notice of appeal from the judgment entered 30 August 1972 and the court signed appeal entries. Also, on this same date, District Judge Clark held an *in camera* hearing on the remaining issues. Following the presentation of the evidence, he entered an order filed 20 September 1972 awarding plaintiff custody of the minor child, exclusive possession and control of the home (owned by the parties as tenants by the entirety), and ownership of a 1965 Buick automobile. The order further provided that defendant was to make the following payments: (1) $249.12 (monthly mortgage payment on home); (2) $30.00 (weekly child support); (3) $40.00 (weekly support and maintenance of wife); and (4) $1,300.00 (plaintiff's legal fees). Defendant was also ordered to pay the annual ad valorem taxes on the home and to pay for the cost of the action.

On 27 September 1972 defendant filed a motion for reduction of alimony. After hearing the evidence and arguments on this motion, District Judge Clark entered an order 30 October 1972 modifying the judgment filed on 20 September 1972 to the effect that defendant no longer had to pay the ad valorem taxes on the home.

On appeal, the Court of Appeals, in an opinion filed on 12 September 1973, affirmed the judgment entered on 30 August 1972 awarding plaintiff a divorce from bed and board. However, the court vacated the judgments filed 20 September 1972

and 30 October 1972 on the grounds that the district court had no jurisdiction to hold the hearings or to enter the judgments pending the appeal. *Bowes v. Bowes*, 19 N.C. App. 373, 198 S.E. 2d 732 (1973). As a result, the cause was remanded for further proceedings on the issues of permanent alimony, child custody and support.

At the 28 January 1974 Session of Rockingham County District Court, District Judge Clark conducted two *in camera* hearings. The first was on the issue of permanent alimony, and the second was on the issues of child custody and support. As to the second hearing, the court filed an order on 21 February 1974 awarding custody of the minor child to defendant on the ground that the child was "unable to get along with her mother." On this appeal, however, we are not concerned with the second hearing.

The first hearing, on plaintiff's motion for permanent alimony, was held on 30 January 1974. At that time, in addition to the testimony offered by the parties, District Judge Clark, upon motion of plaintiff, also considered the stipulations agreed to by the parties in a final pre-trial order filed 29 August 1972, the testimony and evidence presented at the jury trial in August of 1972, and the evidence presented at the subsequent hearings on 1 September 1972 and 19 October 1972.

For purposes of our decision, it is necessary only to focus on the evidence bearing on the award of permanent alimony to the plaintiff-wife. The plaintiff's evidence, pertinent thereto, was as follows:

At the 19 October 1972 hearing, defendant gave the following testimony on direct examination:

"I am on a weekly salary of $156.58 a week, which comes to a total of $8,298.16 per year. This salary comes from M. L. Bowes Construction Company, Inc., and I am the principal stockholder of this corporation. I have had my accountant prepare a statement of profit and loss for the year 1972—through August 31, 1972. . . .

"The stockholder's equity of the corporation as of August 31, 1972, is $46,576.72. The equity as of January 1, 1972, was $65,429.78. My company lost approximately $18,000.00 during the nine-month period from January 1, 1972, through August 31, 1972. As of this date, my com-

Bowes v. Bowes

pany has in its bank account the sum of $14,000.00. There are presently two notes due and owing by the company, which were personally endorsed by me—a $25,000 note and a $22,000 note. In addition, I have a piece of equipment that is in need of repair. I attempted to borrow money from the bank in order to trade this piece of equipment and purchase a new piece, but the bank wouldn't lend me any money for this purpose unless I paid off one of the notes that is already due there.

"I am not able to increase my salary with the company at the present time. My salary has been at its present level for approximately one year.

\* \* \* \*

". . . My company is losing money now because the costs keep going up each year, and I have to pay more salary and wages to get the help I need. Operating expenses are now higher because the equipment I now have needs to be replaced. I am in the grading and excavating business and in connection therewith, I have two D-C tractors, a Cat Motor Grader, a Bucyrus Crane, a 7-G Loader, 3 dump trucks, 3 tandems and sheepfoot roller. One of the tandems was turned over about two weeks ago, and I think it's a total loss—it's not in operation at this time.

"At the present time I have seven people on the payroll and I am four short. My son Ronnie works for me—he keeps the books and is familiar with the books and records of the company. I am in bad need of a shop to house my equipment in order to work on it. In this kind of weather, we are held up, and we haven't done anything this week so there is no income for this week. And when it rains like this in the winter time, we are more or less at a standstill, with no income.

"I live in the office. I bought a used mobile home for an office until I could build one, but I haven't yet been able to build and I have lived in the office to save expenses. There is a bedroom in the back of the trailer and I am sleeping on a bed that my wife threw away.

\* \* \* \*

"In regard to my business, gross receipts for the period January 1, 1971, through August 31, 1971, was $83,167.05.

Gross receipts for the same period of this year was $95,584.73. My gross receipts are up this year. The salaries and wages for the period, January 1, 1971, through August 31, 1971, were $39,256.39. . . ."

Also at the 19 October 1972 hearing, Frank Jones, C.P.A., who did the accounting work for Bowes Construction, gave the following testimony:

"The records that I received from the company indicate that this company had a loss of approximately $18,000 in the first nine months of the year 1972. The only thing that I determined myself was the depreciation for this eight months, the other figures were given to me by M. L. Bowes Construction Company, Inc."

Plaintiff also requested the court to take judicial notice of defendant's tax returns for the years 1964 through 1970. These returns had previously been introduced at the 1 September 1972 hearing. Plaintiff's Exhibit No. 4 submitted at that time is reproduced in full below:

### DEFENDANT'S TAX RETURNS

#### (1964-1970 Stipulated Summary)

| Year | Gross Receipts from Business | Depreciation Business Property | Adjusted Individual Gross Income. |
|------|------|------|------|
| 1964 | $102,238.27 | $12,045.04 | $ 4,637.43 |
| 1965 | 120,781.42 | 15,532.03 | 11,831.80 |
| 1966 | 151,424.38 | 16,276.94 | 12,092.44 |
| 1967 | 158,570.35 | 16,980.69 | 11,694.88 |
| 1968 | 171,323.62 | 15,771.07 | 14,608.24 |
| 1969 | 164,517.93 | 15,036.22 | 16,086.12 |
| *1970 (1/1/70- 4/30/70) | 37,413.55 | 5,004.44 ⎫ | |
| *1970 (5/1/70- 12/31/70) | 99,965.26 | 8,887.46 ⎭ | 6,775.14 |

*Prior to incorporation as of 5/1/70, Defendant operated as a sole proprietorship under the name of M. L. Bowes Construction Co.

Having requested the court to take judicial notice of the above evidence, plaintiff proceeded to offer the following testimony as to events subsequent to the 19 October 1972 hearing.

Plaintiff testified that through May of 1973 defendant paid her $75.00 per week as alimony and child support; that from 31 May 1973 to 31 August 1973 (with the exception of one week in June when defendant made no payment) defendant paid her $40.00 per week as alimony and child support; that on 31 August 1973 her minor daughter went to live with defendant in his office trailer, and that they later moved into a four-room rental house; and that from 5 September 1973 to 27 December 1973 (with the exception of three weeks when defendant made no payment) defendant paid her $62.00 per week as alimony.

Plaintiff also stated that during the summer months of 1973 her minor daughter and defendant took a seven-day trip to the beach, a four-day trip to Canada, and a one-week trip to Las Vegas.

As to her personal earnings, plaintiff testified that she worked at Leinwand's Department Store as an alterations clerk and made $60.00 to $70.00 per week after taxes. However, she stated that this job might be terminated at any time. In addition, she testified that she received $90.00 per month from the rental of a portion of the home. Concerning her reasonable support requirements, plaintiff introduced an itemized exhibit indicating that her total monthly expenses amounted to $558.37 ($6,700.44 per year).

Plaintiff called her son, Ronnie Bowes, who testified on direct examination that on 7 July 1973 he borrowed $2,300.00 from Bowes Construction for the purpose of making a down payment on a home. According to Ronnie, the terms of the transaction were as follows: "Pursuant to a verbal agreement, the loan need not be repaid until I am able to do so. I am being charged no interest on this loan." Ronnie further stated that defendant, his father and employer, had personally authorized and approved this transaction.

The pertinent evidence offered by defendant is summarized below:

He was the president and the principal shareholder of Bowes Construction Company, Inc. As president, he received a gross weekly salary of $200.00 ($148.83 net). His salary was

his only source of income and was determined by Mr. Frank Jones, the accountant and financial advisor for Bowes Construction. Bowes Construction had two notes outstanding at a local bank, one with a balance of $25,000.00 and the other with a balance of $20,000.00. [We note he had apparently reduced the balance on the second note by $2,000.00 since the 19 October 1972 hearing.] His own personal monthly living expenses, including the support of his minor daughter, amounted to $556.69 ($6,680.28 per year).

As to the financial aspects of maintaining the home in which his wife had been residing since their separation and subsequent divorce from bed and board, defendant presented the following statistics:

| | |
|---|---|
| Fair market value of home | $40,000.00 |
| Tax valuation of home | 30,000.00 |
| Equity in home | 27,000.00 |
| Monthly mortgage payment | 249.12 |
| Annual ad valorem taxes (city & county) | 547.45 |
| Annual insurance (home, loan, etc.) | 442.00 |

In rebuttal to plaintiff's testimony concerning the vacations, defendant testified that the beach trip was to a friend's house where the only expenses were for food and gas; that the Canadian trip was fully paid for by the Kiwanis Club; and that the Las Vegas trip, for which he paid most of the expenses, involved an annual army reunion that he had attended for the past three years.

Defendant also stated that he had moved into the four-room rental dwelling ($150.00 per month) because the one-bedroom mobile home he had previously occupied was too small for him and his minor daughter.

On cross-examination, defendant said that he did not know the 1973 gross income of Bowes Construction or the number of shares or percentage of outstanding stock held by the three individual shareholders of Bowes Construction. He did state, however, that he was the majority stockholder.

On re-direct examination, defendant testified that his accountant, Mr. Jones, would have the figures as to the 1973 gross income of Bowes Construction and the distribution of outstanding stock. However, Mr. Jones did not testify at this particular hearing as neither party called him as a witness.

After hearing the above evidence of the parties, including prior testimony and evidence adduced at previous hearings, District Judge Clark made the following findings of fact and conclusions of law.

### "FINDINGS OF FACT

1. The plaintiff is a dependent spouse who is substantially in need of maintenance and support from the defendant.

2. The defendant is the supporting spouse from whom the plaintiff is substantially in need of maintenance and support.

3. The defendant abandoned the plaintiff as alleged in the complaint.

4. The plaintiff has reasonably necessary living expenses in excess of $558.00 per month over and above the amount of periodic installments due for the purchase and maintenance of the family residence in which she resides.

5. The defendant has special skills and earning capacity as a grading contractor which enable him to earn an income in excess of $14,500.00 per year from which to continue to provide the plaintiff with the same family residence and substantially the accustomed standard of living which she enjoyed while she lived with the defendant as man and wife; and that since the defendant separated himself from the plaintiff in 1970 he has failed to exercise his reasonable capacity to earn because of a disregard of his marital obligation to provide reasonable support for his wife and minor child.

### CONCLUSIONS OF LAW

The plaintiff is entitled to an award of permanent alimony consisting of exclusive possession and control of the family residence owned by the parties and periodic payments of support in keeping with the defendant's reasonable earning capacity, the reasonable needs of the plaintiff and the other circumstances of the case."

Based on the above findings of fact and conclusions of law, District Judge Clark ordered that plaintiff be awarded the exclusive possession and control of the family residence; that defendant was to pay the outstanding taxes due on said resi-

dence for 1973; that defendant was to make all mortgage pay-
ments on the deed of trust on said property, incuding those then
in arrears; that defendant was to return a TV set and a TV an-
tenna that he had previously removed from said residence; and
that defendant was to pay into the office of the Clerk of Superior
Court, for the use and benefit of plaintiff, $200 for the month
of February, 1974, and $400 per month thereafter.

To the entry and signing of the foregoing judgment, de-
fendant objected and took exception. On appeal, the Court of
Appeals vacated the judgment on two grounds: (1) that there
was no evidence to support the finding defendant was making
a bad faith effort to earn a reasonable income; and (2) that
the wife's earnings were not taken into account in determining
the amount of permanent alimony. 23 N.C. App. at 72-73, 208
S.E. 2d at 272.

Plaintiff's petition for writ of certiorari to the Court of
Appeals was allowed on 3 December 1974.

*Gwyn, Gwyn & Morgan by Julius J. Gwyn for plaintiff
appellant.*

*O'Connor & Speckhard by Donald K. Speckhard for defend-
ant appellee.*

COPELAND, Justice.

[1]   The primary exception and assignment of error in the case
at bar is based on the trial court's Finding of Fact No. 5. In
that finding, the court, as a basis for its award, found that
"defendant has special skills and earning capacity as a grading
contractor which enable him to earn an income in excess of
$14,500.00 per year . . . and that since the defendant separated
himself from the plaintiff in 1970 he has failed to exercise his rea-
sonable capacity to earn because of a disregard of his marital
obligation to provide reasonable support for his wife and minor
child." The question presented by this assignment is whether
there was sufficient evidence before the trial court to support
an award based on earning capacity as opposed to actual earn-
ings.

While it is true that an award of alimony may be based
upon the supporting spouse's ability to earn as distinguished
from his actual income, the rule seems to be applied only when
it appears from the record that there has been a deliberate at-

tempt on the part of the supporting spouse to avoid his financial family responsibilities by refusing to seek or to accept gainful employment; by wilfully refusing to secure or take a job; by deliberately not applying himself to his business; by intentionally depressing his income to an artificial low; or by intentionally leaving his employment to go into another business. *See* Annot., 1 A.L.R. 3d 6, 47-49 (1965); 24 Am. Jur. 2d Divorce and Separation § 632 (1966); 27A C.J.S. Divorce § 233(3) (1959). *Accord, Harris v. Harris,* 258 N.C. 121, 128 S.E. 2d 123 (1962); *Conrad v. Conrad,* 252 N.C. 412, 113 S.E. 2d 912 (1960); *Sguros v. Sguros,* 252 N.C. 408, 114 S.E. 2d 79 (1960); *Davidson v. Davidson,* 189 N.C. 625, 127 S.E. 682 (1925); *Robinson v. Robinson,* 10 N.C. App. 463, 179 S.E. 2d 144 (1971). *See also* G.S. 50-16.5(a), which provides: "Alimony shall be in such amount as the circumstances render necessary, having due regard to the estates, earnings, *earning capacity,* condition, accustomed standard of living of the parties, and other facts of the particular case." (Emphasis supplied.)

In *Conrad v. Conrad, supra,* plaintiff-wife, who was seeking alimony without divorce, moved for alimony *pendente lite.* The substance of the evidence concerning the husband's ability to pay was that as an insurance salesman his net income during prior years had been $10,756.16 in 1956, $15,357.94 in 1957, $8,477.00 in 1958 and $3,916.43 for the first eight months of 1959. Defendant-husband explained his decline in income by a reduction in commissions paid by one of his largest accounts and an unfavorable ruling by the local insurance board. It was not contended that defendant had assets other than his income capacity. The trial court found that defendant was capable of earning $16,000.00 a year and awarded plaintiff-wife $600.00 per month alimony *pendente lite* and $1,000.00 attorney fees. This Court, in an opinion by Justice Rodman, reversed. Specifically, the Court stated:

> "The award should be based on the amount which defendant is earning when alimony is sought and the award made, if the husband is honestly engaged in a business to which he is properly adapted and is in fact seeking to operate his business profitably. *Sguros v. Sguros,* [252 N.C. 408, 114 S.E. 2d 79.]

> "*To base an award on capacity to earn rather than actual earnings, there should be a finding based on evidence that the husband was failing to exercise his capacity to*

*earn because of a disregard of his marital obligation to pro-*
*vide reasonal support for his wife. Davidson v. Davidson,*
*supra.* There is no finding to that effect in this case." *Id.* at
418, 113 S.E. 2d at 916. (Emphasis supplied.)

In the *Davidson* case, cited in *Conrad,* the trial court had
awarded alimony *pendente lite* which exceeded the net income
of the defendant. Although this Court, in an opinion by Justice
Adams, conceded that the award may be based on the income
capacity of the husband, it nonetheless reversed the trial court
and remanded the case for additional evidence concerning the
value of the husband's "entire estate, and the net annual income
that is or should be derived from his estate or labor." 189 N.C.
at 627, 127 S.E. at 683.

The husband's ability to pay arose in a different context
in *Sguros v. Sguros, supra.* Plaintiff-wife was seeking alimony
without divorce and moved for alimony *pendente lite.* Defendant-
husband had a Ph.D. degree in bacteriology and at the time the
action was instituted was employed as a tobacco research tech-
nician at an annual salary of $10,740.00. He had an additional
income from a Naval Reserve unit of approximately $1,000.00 per
year. At the time of the hearing, however, he had resigned from
these positions and had accepted a professorship at an annual
salary of $8,000.00. He filed an affidavit stating that the oppor-
tunities for advancement in his field were greater as a university
teacher than as a research technician. The trial court awarded
alimony *pendente lite* based on an annual income of $11,800.00.
On appeal, this Court, in an opinion by Justice Higgins, stated:
"There is neither allegation nor evidence, nor finding his change
of positions was otherwise than for the reason he assigns.
Under the circumstances here disclosed, we hold he had the
right, so long as he acted in good faith, to accept the professor-
ship at Miami even though at a reduction in salary. The court
should have fixed the monthly payments on the basis of a salary
of $8,000." 252 N.C. at 411, 114 S.E. 2d at 82.

In the above cited cases the basic issue is the same, to wit:
Is the husband, by reducing his income, primarily motivated by
a desire to avoid his reasonable support obligations? In order
to answer this question in the affirmative, and therefore base
an award of alimony upon earning capacity as distinguished
from actual earnings, the finder of fact must have before it
sufficient evidence of the proscribed intent. "Intent being a men-
tal attitude, it must ordinarily be proven, if proven at all, by cir-

cumstantial evidence, that is, by proving facts from which the fact sought to be proven may be inferred." *State v. Murdock,* 225 N.C. 224, 226, 34 S.E. 2d 69, 70 (1945). *See generally* Stansbury, N. C. Evidence (Brandis Revision) § 83, 257 fn. 78 (1973).

In the instant case, plaintiff-wife contends that the proscribed intent may be inferred from the following facts: (1) In March of 1970 defendant established a separate bedroom for himself in the marital home; (2) on 1 May 1970 defendant incorporated his grading business as M. L. Bowes Construction Company, Inc.; (3) on 29 March 1971 defendant gathered up his personal effects and moved out of the marital home; and (4) in 1969 (the year prior to incorporation) defendant's net earnings were $16,086.12, while in 1970 (the year of incorporation) his net earnings were only $6,775.14. Plaintiff-wife argues that these facts are sufficient to establish a *prima facie* case that defendant intentionally depressed his income, or the corporate income, to an artificial low. Plaintiff speculates that defendant has been able to accomplish this objective in one or more of the following ways: (1) He has intentionally fixed a low corporate salary for himself; (2) he has diverted corporate earnings elsewhere; (3) he has failed to make a good faith effort to increase corporate earnings.

Based on a close examination of the record, we believe there is insufficient evidence to support allegations one (1) and three (3). Plaintiff produced no evidence to refute the explanations given by defendant. However, as to allegation two (intentional diversion of corporate earnings) plaintiff offered the following evidence in support of her contention: (1) Defendant authorized a corporate "loan" of $2,360.00 to his son, a vicepresident and stockholder of the corporation, on 7 July 1973; and (2) defendant and his minor daughter, during the summer months of 1973, made a seven-day trip to the beach, a four-day trip to Canada, and a one-week trip to Las Vegas.

Although the above evidence appears to be inconsistent with defendant's net corporate salary and with net corporate earnings (or losses) for the period 1970 to 1973, it is not sufficient to establish that defendant intentionally diverted corporate funds in disregard of his marital obligation to provide reasonable support. Of course, as to the $2,360.00 "loan" to defendant's son, an employee and vice-president of the firm, it is undisputed

that this transaction involved corporate funds. However, defendant's evidence indicated that the loan was made so his son could make the down payment on a home. Conceding that this transaction may raise an inference that defendant was diverting corporate funds in disregard of his marital obligation, it falls far short of establishing this contention. Consequently, we conclude, based on the evidence in the record, that it is mere speculation to presume defendant authorized this transaction with the proscribed intent.

[2] Plaintiff, apparently aware of this failure of proof, argues that she has nonetheless offered sufficient evidence to shift the burden of producing evidence to defendant. Specifically, she contends: "The plaintiff carries the burden of proof. But, after offering sufficient evidence to establish a *prima facie* case in her favor, giving her the benefit of all reasonable inferences to be drawn therefrom, the risk of non-persuasion should shift to the defendant to offer explanation for his circumstances." Plaintiff cites Stansbury, N. C. Evidence (Brandis Revision) § 203 (1973), as authority for the above contention. Suffice it to say, the authority cited *clearly* fails to support this contention.

The burden of proof was on the plaintiff throughout the case. Defendant was under no legal duty to offer any explanation as to any of plaintiff's evidence (although we note he elected to do so). In fact, based on our examination of the evidence in this record, we are of the opinion that plaintiff has failed to make out a *prima facie* case for the award of alimony based on earning capacity. If plaintiff's allegations are true, as she contends, then she should have produced evidence in support thereof by employing the procedures provided for in Rules 34 and 45 (c) of the North Carolina Rules of Civil Procedure. These discovery rules would have allowed her to examine and to produce at trial any pertinent corporate records supportive of her allegations. This, however, she did not do. Also, we note that plaintiff failed to subpoena defendant's corporate accountant and to examine him as an adverse witness pursuant to Rules 43 (b) and 45 (a) of the North Carolina Rules of Civil Procedure. These discovery rules provided plaintiff with an adequate means of developing the type of evidence she needed in this case. We fail to discern any unusual hardship an implementation of these rules would require.

In her brief, plaintiff states that "[i]f the Court of Appeals is correct, nothing short of the defendant's confession or other admission will serve as acceptable evidence." This contention has no merit whatsoever. Plaintiff could and most definitely should have used the discovery rules herein cited. Having failed to do so, she cannot now assert that only a confession or other admission was the only way she could have made out her case.

Defendant contended on appeal to the Court of Appeals that the trial court did not give due consideration to the earnings of both parties in determining its award of alimony. *See* G.S. 50-16.5(a), *supra.* The Court of Appeals agreed. Since this cause must be remanded for further proceedings, it is not necessary for us to fully discuss this assignment of error. Suffice it to say, it is clear that the wife's earnings must be taken into account. *See, e.g., Sayland v. Sayland,* 267 N.C. 378, 148 S.E. 2d 218 (1966).

For the reasons herein stated, the judgment of the Court of Appeals *is*

Affirmed.

Justice HUSKINS dissenting.

The evidence shows that defendant's adjusted gross income in 1968 was $14,608.24 and in 1969 was $16,086.12. For the calendar year 1970 his adjusted gross income fell to $6,775.14. What is the explanation for this drastic reduction?

In March of 1970 defendant established a separate bedroom for himself and on 29 March 1971 completed the abandonment of his wife by moving out of the marital home and taking his personal effects with him.

Following the incorporation of his business on 1 May 1970, defendant placed himself on a weekly salary of $156.58. He now contends that sum represents his actual earnings and that any award of alimony to his wife must be based thereon, taking into account the separate earnings of his wife. On the other hand, plaintiff contends defendant has intentionally depressed his income to avoid his obligations to her and that the trial tribunal was justified in basing an award on defendant's earning capacity rather than on the meager earnings he acknowledges.

---
Bowes v. Bowes
---

No satisfactory explanation appears in the record for defendant's drastic drop in income following the incorporation of his business. The majority blames the wife for having failed to utilize the discovery procedures provided in Rules 34 and 45(c) of the Rules of Civil Procedure. The majority says these discovery rules "would have allowed her to examine and produce at trial any pertinent corporate records supportive of her allegations. This, however, she did not do." I view the matter differently.

In my view the evidence adduced by the plaintiff was sufficient to support a finding, nothing else appearing, that defendant had incorporated his business for the purpose of intentionally depressing his income to an artificial low and was hiding behind the corporate structure to avoid his financial responsibilities to his wife. If he desired to avoid such findings and an award based on his demonstrated earning capacity prior to incorporation, the onus was on him to come forward with his corporate records, tax returns, receipted bills, and other pertinent documentary evidence, and negate plaintiff's prima facie showing. In light of the fact that all such records are in defendant's possession, it is unrealistic, and I think contrary to law, to require plaintiff to pierce defendant's corporate smoke screen by use of discovery procedures. If the records in his possession show what he says they show, it is no trouble for him to produce them in court. His failure to do so suggests rather strongly that plaintiff's position is correct.

The majority decision permits defendant to abandon his wife with impunity and then requires her to ascertain, at her peril, his true earnings as revealed by his corporate records. I would let him conceal that truth at *his* peril.

For the reasons stated I respectfully dissent.

Chief Justice SHARP joins in this dissent.