PATRICIA MARILYN HONEYCUTT, Plaintiff v. WALLACE B. HONEYCUTT, Defendant

No. COA01-1008

(Filed 3 September 2002)

**1. Divorce— alimony—dependent spouse—permanently adjudicated at initial hearing**

In an order terminating alimony, the trial court improperly concluded that defendant was no longer a dependent spouse because that issue was permanently adjudicated during the initial alimony hearing. The court may reduce the amount of alimony to zero if a change of circumstances is found to exist.

**2. Divorce— alimony—earning capacity—not investment potential or social security**

The findings in an order terminating alimony did not address plaintiff's earning capacity where they referred to potential investment income and social security rather than earning capacity from working.

Judge GREENE concurring in part and dissenting in part.

Appeal by plaintiff from order entered 6 December 2000 by Judge Mark S. Culler in Iredell County District Court. Heard in the Court of Appeals 21 May 2002.

*White and Crumpler, by Fred G. Crumpler, Jr. and Laurie Schlossberg Kelly, and Jane S. Atkins & Associates, P.A., by Jane S. Atkins and Elizabeth A. Stephenson, for plaintiff-appellant.*

*Woodruff & Associates, P.A., by Carolyn J. Woodruff, for defendant-appellee.*

HUDSON, Judge.

Plaintiff, Patricia Marilyn Honeycutt, appeals an order entered 6 December 2000 terminating her ex-husband's obligation to pay alimony. We reverse and remand for further proceedings.

Plaintiff married defendant, Wallace B. Honeycutt, in 1956. They separated July 1989, and divorced September 1990. Before the divorce was final, plaintiff filed a verified complaint seeking ali-

mony, "reasonable support, maintenance and subsistence," possession of the marital home in addition to its furnishings, attorney's fees, and equitable distribution of the marital property. On 12 November 1991, the trial court entered a Judgment of Equitable Distribution and Qualified Domestic Relations Order, which distributed the couple's property and gave the marital home to plaintiff. Following a jury trial on the issue of fault, the trial court entered an Alimony Judgment on 31 January 1992 finding among other things that plaintiff was a dependent spouse pursuant to N.C. Gen. Stat. § 50-16.1(3) (1995), that defendant was a supporting spouse pursuant to N.C. Gen. Stat. § 50-16.1(4) (1995), and that defendant was capable of financially supporting plaintiff. Defendant was ordered to pay alimony of $3,261.74 per month to plaintiff "until the death of either party, or the remarriage of the plaintiff, whichever event should first occur." The court also decreed that "this Order may be reviewed as to permanent Alimony, upon finalization of the equitable distribution action."

On 9 December 1998, defendant filed a motion to reduce his alimony payments to plaintiff on the grounds that there was a "substantial change of circumstances" in that he was in the process of selling his dental practice and would soon retire. Plaintiff filed a motion to increase defendant's alimony payments, because she contended that he was enjoying an increase in income from rental property, from the sale of his dental practice, and from annuity contracts, in addition to his annual income as a dentist. The record does not indicate whether either of these motions were heard. The parties entered a Consent Judgment on 9 March 2000, resolving all outstanding equitable distribution issues.

On 2 August 2000, defendant filed a motion to terminate his alimony payments to plaintiff, citing a "substantial material change in circumstances in addition to the change contemplated by the alimony judgment entered in 1992." Defendant noted the following changes in circumstance:

a. [Defendant] is now age 66 and [plaintiff] is now age 65. Both are receiving social security and both are or should be now receiving Medicare.

b. The defendant [] has no regular employment and is retired.

4. [Defendant] no longer has a monthly income from his practice.

a. In equitable distribution, [defendant] divided the retirement plans with [plaintiff] fifty-fifty.

b. The needs of [plaintiff] have materially declined since the hearing in 1991 in that she now has a paid for home, paid for automobile, Medicare, upon information and belief no household help and her medical bills are less.

c. [Plaintiff] has adequate investments along with her social security to provide for her needs and her "paid for" home and with her "paid for" automobile and Medicare.

[Plaintiff] has the luxury of living in a 5000 square foot "paid for" residence containing five bedrooms and she could easily downsize her residence to a more suitable size for a person in retirement age should she need additional resources.

Defendant also filed an alternative motion to terminate his alimony payments, relying on the trial court's earlier order that alimony could be reviewed as soon as the equitable distribution claim was finalized. Plaintiff replied to both motions, and in response to the alternative motion contended that "the Alimony Judgment is a judgment awarding the plaintiff permanent alimony from the defendant."

On 6 December 2000, the trial court concluded that the previous alimony judgment was an "Order of 'permanent alimony' but did not consider the amount of alimony to be a fully determined issue." The trial court further concluded that according to the previous judgment, "neither party was to be required to demonstrate changed circumstances in order for the Court to adjust the actual amount of the alimony payment." However, the trial court concluded, that because nine years had passed since entry of the alimony judgment, and since the property was equitably distributed (except for one piece of property), defendant "has the burden of demonstrating changed circumstances both for purposes of requesting that the Court terminate alimony altogether on the theory that [plaintiff] is no longer dependent and for purposes of requesting that, absent termination, the award be reduced." The trial court held that defendant met his burden of proving changed circumstances, that plaintiff was "no longer a dependent spouse," and terminated alimony payments effective 2 October 2000.

Plaintiff appeals this Order and in her sole argument contends that "the trial court erred in terminating [defendant's] obligation to pay alimony to [plaintiff] on the grounds that said ruling is not sup-

ported by proper findings of facts or conclusions of law." She points to two alleged legal errors in the trial court's order: (1) the conclusion that she is no longer a dependent spouse, and (2) findings and conclusions that she has a certain earning capacity. We note that the applicable alimony statutes, N.C. Gen. Stat. §§ 50-16.1 *et seq.*, were amended in 1995. "Session Laws 1995 . . . provides that the act applies to civil motions filed on or after that date, and shall not apply to pending litigation, or to future motions in the cause seeking to modify orders or judgments in effect on October 1, 1995." N.C.G.S. § 50-16.1 (1995) (editor's note). The original action was filed prior to 1995, and the statute and applicable case law from before the 1995 amendments govern. *See id.*

**[1]** We first address whether the trial court properly concluded that plaintiff is no longer a dependent spouse. Pursuant to N.C. Gen. Stat. § 50-16.9(a) (1987), "[a]n order of a court of this State for alimony or alimony pendente lite, whether contested or entered by consent, may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested." Here, the defendant had the burden of showing a change of circumstances to support his motion to decrease alimony. "Even where the moving party has met [his] burden to show relevant changed circumstances, however, the trial court is not required to modify an alimony award, but may do so in its discretion." *Kowalick v. Kowalick*, 129 N.C. App. 781, 785, 501 S.E.2d 671, 674 (1998) (citing *Robinson v. Robinson*, 10 N.C. App. 463, 468, 179 S.E.2d 144, 148 (1971)).

"To determine whether a change in circumstances under G.S. 50-16.9 has occurred, it is necessary to refer to the circumstances or factors used in the original determination of the amount of alimony awarded under G.S. 50-16.5." *Rowe v. Rowe*, 305 N.C. 177, 187, 287 S.E.2d 840, 846 (1982), *disc. rev. denied*, 314 N.C. 331, 333 S.E.2d 489 (1985). Although now repealed, N.C. Gen. Stat. § 50-16.5 (1987), entitled "Determination of amount of alimony," requires the consideration of the "estates, earnings, earning capacity, condition, accustomed standard of living of the parties, and other facts of the particular case" in setting the amount of alimony. *See also Rowe*, 305 N.C. at 187, 287 S.E.2d at 846. However, the trial court may not reconsider the issue of whether the Plaintiff is a dependent spouse, because it was "permanently adjudicated" during the initial alimony hearing. *See Rowe*, 305 N.C. at 187, 287 S.E.2d at 846.

Here, the trial court improperly concluded that plaintiff "is no longer a dependent spouse," because the trial court determined that relative status of the parties permanently as of the date of the original order. *See id.* Subsequent to that order, the court may consider only "whether any change of circumstances justified a modification or termination of the alimony order." *Cunningham v. Cunningham,* 345 N.C. 430, 437, 480 S.E.2d 403, 407 (1997). "We note that the trial court may, if a change in circumstances is found to exist, reduce the amount of alimony to zero, but such modification does not result in the loss of dependent spouse status." *Kowalick,* 129 N.C. App. at 786, 501 S.E.2d at 675.

"On remand, the trial court should make findings showing its consideration of the [N.C.G.S. §] 50-16.5 factors on which the parties have presented competent evidence." *Id.* at 787, 501 S.E.2d at 675. However, we note that findings 7 and 8 contain provisions which are not supported by the evidence or which are not consistent with the law. The court is not to calculate plaintiff's expenses based on what they would be if she sold her home and moved to a smaller one, without taking into account the cost of such a move, and the resultant lessening of plaintiff's standard of living. In addition, we do not believe the evidence supports the finding that plaintiff's expenses "should be reduced by $239.16 for medical insurance since Plaintiff is now eligible for Medicare." The record reflects that plaintiff's health care costs are for supplemental insurance to cover health care needs and prescription medications which Medicare does not cover. The record reflects no reason for the court to require her to lessen her standard of living by reducing the quality or availability of health care in this manner. To the contrary, the record reflects that by carrying this insurance, the plaintiff has taken reasonable steps to provide for her known health care needs. We remand for the trial court to make new findings and conclusions consistent with this opinion.

[2] However, plaintiff raises a second challenge to the conclusions of law. Plaintiff argues that the trial court erred in "considering [her] earning capacity," as opposed to her actual earnings, without first determining that she "was intentionally, in bad faith, suppressing her actual income." The statute in effect at the time of this claim specifically required the court to consider the income and earning capacity of the parties, among other factors that may be considered, and here the conclusion makes reference to "earning capacity." The findings on which this conclusion is based refer to potential investment income and social security, rather than earning capacity from working, as the

term is typically used. Thus, as we do not believe the court's findings address plaintiff's "earning capacity," we need not address this issue further.

Reversed and remanded for further findings consistent with this opinion.

Judge BIGGS concurs.

Judge GREENE concurs in part and dissents in part.

GREENE, Judge, concurring in part and dissenting in part.

I agree with the majority as to the first part of its opinion holding that the trial court erred in concluding plaintiff was no longer a dependent spouse. The majority opinion, however, also holds that the trial court's findings do not discuss plaintiff's earning capacity and thus this Court need not address the question whether the trial court erred in failing to make a finding as to plaintiff's bad faith. As to this part of the opinion, I dissent.

According to pre-1995 case law, "an award of alimony may be based upon [a] spouse's ability to earn as distinguished from [her] actual income . . . only when it appears from the record that there has been a deliberate attempt on the part of the . . . spouse to avoid [her] financial family responsibilities." *Bowes v. Bowes*, 287 N.C. 163, 171-72, 214 S.E.2d 40, 45 (1975); *Spencer v. Spencer*, 70 N.C. App. 159, 171, 319 S.E.2d 636, 645 (1984) (in order to use earning capacity, the trial court must make a "finding that the reduction in income was primarily motivated by a desire to avoid . . . reasonable support obligations"). "Absent such a finding, the trial court must determine alimony based on [a spouse's] income alone, not [her] earning capacity." *Spencer*, 70 N.C. App. at 171, 319 S.E.2d at 645.

In this case, the trial court concluded that "[i]n light of the fact . . . the individual estates, earnings, earning capacities, and conditions of the parties have changed substantially and . . . [plaintiff] is presently capable of supporting and maintaining herself . . . without any assistance from . . . [d]efendant," it was terminating defendant's spousal support obligations. The trial court's findings on which this conclusion is based include expert testimony regarding plaintiff's

potential investment income.[1] Reliance on this testimony, which essentially speaks to plaintiff's earning capacity, would be error without an additional finding of bad faith on her part.[2] *See Bowes*, 287 N.C. at 171-72, 214 S.E.2d at 45; *Spencer*, 70 N.C. App. at 171, 319 S.E.2d at 645. Moreover, in ascertaining plaintiff's actual investment income for purposes of alimony, the trial court must consider "[t]he value of property within a reasonable time before or after the commencement of [the present] action." *Clark v. Clark*, 301 N.C. 123, 135, 271 S.E.2d 58, 67 (1980). As the order does not reflect the extent, if any, to which the trial court relied on the expert testimony regarding plaintiff's investment income, I would remand this issue to the trial court for findings consistent with this opinion.

---

1. It must be noted that plaintiff is sixty-five years old and not employed. Consequently, she does not derive any income from work.

2 It is true that, as the majority states, earning capacity is typically used in reference to a person's occupation; however, the concept is equally applicable where a trial court imputes income to a spouse based on the earning capacity of her investment portfolio, which, if used more effectively, could yield a higher return.