TIMMONS-GOODSON, Judge.
Darrell Inman ("defendant") appeals the trial court's judgment awarding alimony in favor of Karen Inman ("plaintiff"). Because we conclude that the trial court erred in applying the earning capacity rule, we reverse and remand the trial court's judgment.
The facts and procedural history pertinent to the instant appeal are as follows: Plaintiff and defendant were married on 7 May 1988 and separated on 2 May 2002. On 17 June 2002, plaintiff filed a complaint against defendant, seeking divorce as well as post-separation support, alimony, and equitable distribution of the marital estate. On 28 June 2002, defendant filed an answer denying the allegations of plaintiff's complaint and requesting equitabledistribution of the marital estate. The case proceeded to trial, and on 17 September 2003, the trial court issued an alimony judgment containing the following pertinent findings of fact:
8. That the plaintiff is 36 years of age and is currently disabled as determined by the Social Security Administration. Plaintiff receives a monthly check in the sum of $606.00 after $54.00 per month is deducted from the gross monthly benefit for Medicaid. Plaintiff has no other source of income other than her Social Security benefits, although in addition to housing and utilities, plaintiff's parents have occasionally provided assistance to her in the past.
. . . .
14. That the plaintiff has reasonable average monthly expenses [totaling $1,527.30].
. . . .
20. [T]hat while living together, the parties relied primarily on defendant's income for paying monthly bills. Plaintiff's disability payments were also used to some extent for paying bills.
21. That the parties were generally able to remain current in their bills, but did declare bankruptcy in March of 2001. Since that time and prior to the date [of] separation, the parties remained current in the payment of their bills.
. . . .
23. From the date of separation to the date the house was sold, the defendant paid the mortgage on the marital home.
24. That the defendant is 38 years of age, is in good health and has a high school education. Defendant has received some training in automotive school and has received on the job training in automotive sales and service.
25. That in 1999, the defendant was working for Skyland Automotive in the service department and had a gross annual income of $53,015.00.
26. That in the year 2000, the defendant continued to work at Skyland Automotive and had a gross annual income of $44,128. In October, 2000, the defendant's job changed from work in service to work in sales and he was paid on commission.
27. That for the year 2001, the defendant[] earned the sum of $29,317[.]00 in commissions from Skyland Automotive. In addition he earned $5,825.00 in bonus checks paid directly by certain automobile manufacturers.
28. That in the year 2002, the defendant had earnings at Skyland Automotive totaling $37,334.05 from his sales commissions. Additionally, the defendant received bonus checks from certain automobile manufacturers for certain sales. That for the year 2002, the defendant earned $1,393.75 from Mazda Motors of America, Inc.[,] $3,975.00 from Daimler Chrysler, and $800.00 from Mercedes-Benz USA.
29. That as of the date of separation, the defendant was employed in sales at Skyland Automotive.
30. That in July of 2003 the defendant voluntarily ended his employment with Skyland to begin work with Bradshaw Saturn in Asheville, NC.
31. That at Bradshaw, the defendant is paid $40.00 a day, which later is deducted from any commissions he earns. That in the two pay periods earned thus far on the job at Bradshaw Saturn, the [defendant] has netted $1,250.00 (for 4 weeks work).
32. That between the months of January 2003 and the time the defendant left Skyland, he earned $24,000-25,000.00 in gross income with Skyland.
33. That the defendant has . . . average monthly expenses [totaling $2,208.99].
34. That the defendant's earning capacity is substantially greater than his current income. Defendant's earning capacity is equal to at least his average annual income over the period of time from 1999 through 2002. Defendant has voluntarily placed himself in a position of earning less than he is capable of earning.
35. That the plaintiff is actually substantially dependant upon the defendant for her maintenance and support and is substantially in need of maintenance and support from the defendant.
Based upon these findings of fact, the trial court concluded as a matter of law that plaintiff was a dependent spouse, that defendant was a supporting spouse, and that an alimony award in plaintiff's favor was equitable. The trial court thereafter ordered that defendant pay plaintiff $350.00 per month in alimony, nunc pro tunc 1 July 2002. Defendant appeals.
The issue on appeal is whether the trial court erred in awarding alimony in plaintiff's favor. Because we conclude that the trial court erred in applying the earning capacity rule to its alimony award, we reverse the trial court's judgment.
N.C. Gen. Stat. § 50-16.3A (2003) requires that the trial court engage in two separate inquiries when awarding alimony. First, the trial court must determine whether a spouse is entitled to alimony. N.C. Gen. Stat. § 50-16.3A(a). "Entitlement to alimony requires that one spouse be a dependant spouse and the other be a supporting spouse." Barrett v. Barrett, 140 N.C. App.369, 371, 536 S.E.2d 642, 644 (2000). "To be a dependent spouse, one must be either `actually substantially dependent upon the other spouse' or `substantially in need of maintenance and support from the other spouse.'" Id. (quoting N.C. Gen. Stat. § 50-16.1A(2)). Thus, "to properly find a spouse dependent the court need only find that the spouse's reasonable monthly expenses exceed her monthly income and that the party has no other means with which to meet those expenses." Beaman v. Beaman, 77 N.C. App. 717, 723, 336 S.E.2d 129, 132 (1985). However, "[j]ust because one spouse is a dependent spouse does not automatically mean the other spouse is a supporting spouse." Barrett, 140 N.C. App. at 373, 536 S.E.2d at 645. "To be a supporting spouse, one must be the spouse upon whom the other spouse is either `actually substantially dependent' or `substantially in need of maintenance and support.'" Id. (quoting N.C. Gen. Stat. § 50-16.1A(5)). After determining that a spouse is entitled to alimony, the trial court must then determine what amount of alimony should be awarded. N.C. Gen. Stat. § 50-16.3A(b). "We review the first inquiry de novo, . . . and the second under an abuse of discretion standard." Barrett, 140 N.C. App. at 371, 536 S.E.2d at 644 (citations omitted).
In determining the amount of alimony to award, the trial court must consider not only the needs of the dependent spouse, but also the "estates and earnings of both spouses[.]" Quick v. Quick, 305 N.C. 446, 453, 290 S.E.2d 653, 658 (1982). The supporting spouse's ability to pay alimony is ordinarily determined by his or her income at the time of the alimony award. Id. However, where thetrial court determines that "the supporting spouse is deliberately depressing his or her income or indulging in excessive spending because of a disregard of the marital obligation to provide support for the dependent spouse," the trial court may base an alimony award on the supporting spouse's capacity to earn. Id.
In Bowes v. Bowes, 287 N.C. 163, 170, 214 S.E.2d 40, 45 (1975), the trial court based its alimony award upon the defendant's earning capacity rather than his actual earnings because "since the defendant separated himself from the plaintiff in 1970 he has failed to exercise his reasonable capacity to earn because of a disregard of his marital obligation to provide reasonable support for his wife and minor child." Our Supreme Court reversed the alimony award after concluding that the trial court was not presented with sufficient evidence to determine that the defendant acted in bad faith when reducing his income. Id. at 174, 214 S.E.2d at 47. The Court noted that
While it is true that an award of alimony may be based upon the supporting spouse's ability to earn as distinguished from his actual income, the rule seems to be applied only when it appears from the record that there has been a deliberate attempt on the part of the supporting spouse to avoid his financial family responsibilities by refusing to seek or to accept gainful employment; by wilfully refusing to secure or take a job; by deliberately not applying himself to his business; by intentionally depressing his income to an artificial low; or by intentionally leaving his employment to go into another business. . . . In the above cited cases the basic issue is the same, to wit: Is the husband, by reducing his income, primarily motivated by a desire to avoid his reasonable support obligations? In order to answer this question in the affirmative, andtherefore base an award of alimony upon earning capacity as distinguished from actual earnings, the finder of fact must have before it sufficient evidence of the proscribed intent.
Id. at 171-73, 214 S.E.2d at 45-46 (citations omitted).
In the instant case, as detailed above, the trial court concluded as a matter of law that plaintiff was a dependant spouse and defendant was a supporting spouse. Defendant testified at trial that he is paid through sales commissions, and that his "[t]ake-home pay is probably for the month about $1,250, probably roughly in that area - $1,200." The trial court thereafter determined that defendant's monthly expenses totaled $2,208.99, but nevertheless awarded alimony in plaintiff's favor after finding that "defendant's earning capacity is substantially greater than his current income . . . [and that defendant] has voluntarily placed himself in a position of earning less than he is capable of earning." After reviewing the record, we conclude that the trial court erred.
As in Bowes, the record in the instant case is insufficient to support a determination that defendant's decision to reduce his income was primarily motivated by his desire to avoid reasonable support obligations. Defendant testified at trial that he left his job at Skyland Automotive for his current job at Bradshaw Motor Group because "I actually accepted a position to go back into service, which is the job of my liking, and I accepted that position." Defendant testified that he turned down a promotion while employed at Skyland Motors because "I had to spend more of mytime at home with - with [plaintiff] while she was sick, and I couldn't accept the position." Defendant explained that plaintiff "was really fussing about it" and "told me I could not - no way I could take it." Defendant also stated that he was offered a position in sales at Skyland Automotive "as a last effort - ditch effort" by Skyland Automotive because he had missed time from work when plaintiff "insisted and forced me to stay with her while she was sick."
"`Intent being a mental attitude, it must ordinarily be proven, if proven at all, by circumstantial evidence, that is, by proving facts from which the fact sought to be proven may be inferred.'" Bowes, 287 N.C. at 173-74, 214 S.E.2d at 46 (quoting State v. Murdock, 225 N.C. 224, 226, 34 S.E.2d 69, 70 (1945)). In the instant case, although evidence introduced at trial tends to show that defendant earns less as an employee of Bradshaw Motor Group than he earned while employed with Skyland Automotive, no evidence was introduced tending to show that defendant accepted his position at Bradshaw Motor Group with the intent to reduce his income in order to reduce his support obligations. Furthermore, "[t]o base an award on capacity to earn rather than actual earnings, there should be a finding based on evidence that the husband was failing to exercise his capacity to earn because of a disregard of his marital obligation to provide reasonable support for his wife." Conrad v. Conrad, 252 N.C. 412, 418, 113 S.E.2d 912, 916 (1960); see Beall v. Beall, 290 N.C. 669, 674, 228 S.E.2d 407, 410 (1976). As in Conrad, "[t]here is no finding to thateffect in this case." 252 N.C. at 418, 113 S.E.2d at 916. Thus, in light of relevant case law, we reverse and remand the trial court's alimony judgment in the instant case. On remand, the trial court may hear any testimony and receive any evidence necessary to determine whether defendant sought decreased wages with the intent to avoid his reasonable support obligations.
Reversed and remanded.
Judges HUDSON and STEELMAN concur.
Report per Rule 30(e).