HENRY B. ROWE v. MARY W. ROWE

No. 96A81

(Filed 3 March 1982)

1. **Divorce and Alimony § 19.5— consent order—proviso that G.S. 50-16.9 not apply**

Usually, public policy requires that a consent order be modifiable in spite of a proviso that G.S. 50-16.9, dealing with modification of alimony orders, would not apply; however, an exception exists where support payments are not alimony within the meaning of the statute and the payments and other provisions for a property division between the parties constitute reciprocal consideration for each other.

2. **Divorce and Alimony § 19; Evidence § 32— evidence of negotiations pursuant to consent order—parol evidence rule not violated**

In an action in which plaintiff filed a motion seeking modification of a consent order so as to terminate or reduce his alimony obligation, the trial court erred in failing to allow defendant to introduce evidence of negotiations between the parties in an effort to show that the consent order and property settlement were reciprocal agreements. Evidence of the negotiations and contemporaneous property settlements of the parties was admissible to clarify the uncertainty created when a non-modification provision of the order appeared to be void as a matter of law. Further, the consent order presented only a part of the total settlement agreement between the parties, and as such, parol evidence was admissible to show the balance of the transaction.

3. **Compromise and Settlement § 6; Divorce and Alimony § 19.5— modifiability of consent order—evidence of compromise admissible**

The trial court erred in failing to allow defendant wife to prove that a consent order was an integral part of a property settlement by introducing a letter written by plaintiff's attorney to defendant's attorney, prior to entry of the consent order, offering a settlement. The letter was admissible as evidence of the reciprocity of the consent judgment and property settlement.

**4. Divorce and Alimony § 19.4— modification of alimony award—evidence of changed circumstances sufficient**

The evidence of changed circumstances was sufficient to warrant modification of an alimony decree where the evidence tended to show that when the consent order was entered, defendant's expenses exceeded her income; that she sold her stock in a company and reinvested the proceeds resulting in a non-alimony income in excess of $54,000 in 1979; and that expenses that year were $32,400 leaving defendant with more than $21,000 in income over expenses. When defendant changed her financial holdings from a passive investment to an investment actively producing income, she changed her need for maintenance and support.

**5. Divorce and Alimony § 20.3— attorney fees—award of unnecessary**

Where defendant was clearly able to defray the expenses of litigation concerning modification of an alimony award, defendant was correctly denied an award of attorney fees.

Justice COPELAND concurring in part, dissenting in part.

Justices CARLTON and MEYER join in this dissenting opinion.

APPEAL by plaintiff pursuant to G.S. 7A-30(2) from decision of the Court of Appeals affirming in part and vacating in part order entered by *McHugh, Judge,* in District Court, SURRY County. This case was argued as No. 96 at the 1981 Fall Term.

Plaintiff and defendant, formerly husband and wife, were divorced in 1976 in an action instituted by plaintiff-husband. At or about the same time the divorce was granted, on 6 December 1976 an order was entered by Foy Clark, Judge, containing the following provisions:

1. THAT the parties stipulate and agree that the Plaintiff is a supporting spouse; that the Defendant is a dependent spouse; that the Defendant is entitled to alimony under the provisions of North Carolina General Statutes 50-16.2; that the sum of $2,500.00 per month is an appropriate amount of alimony; that the Plaintiff has the assets and earning capacity to generate sufficient income to enable the Plaintiff to pay to the Defendant the sum of $2,500.00 per month as permanent alimony and that the parties desire that an Order be entered in accordance with their stipulations providing for the payment by Plaintiff to Defendant of permanent alimony in the sum of $2500.00 per month and subject to the further condition that the Order for alimony shall not be subject to modification upon a showing of change of circumstances by

either party or anyone interested as is provided by North Carolina General Statutes 50-16.9(a); and

2. THAT the Court does find as fact that the Defendant is a dependent spouse actually substantially dependent upon the Plaintiff for her maintenance and support and that the Plaintiff is a supporting spouse; that the defendant is entitled to permanent alimony from the Plaintiff; that the sum of $2,500.00 per month is a reasonable and proper amount of permanent alimony for the Plaintiff to pay to the Defendant; that the Plaintiff has assets and earning capacity to generate sufficient income to enable the Plaintiff to pay the Defendant the said sum of $2,500.00 per month as permanent alimony; and that the parties desire that the within order for alimony shall not be subject to modification upon a showing of change of circumstances by either party or anyone interested as is provided in North Carolina General Statutes 50-16.9(a).

NOW, THEREFORE, by consent of the parties it is hereby ordered that the Plaintiff pay to the Defendant for permanent alimony the sum of $2,500.00 per month, said payments to be due on or before the 5th day of each and every calendar month and to terminate only upon the death of either of the parties or the remarriage of the Defendant, whichever event shall first occur, and it is further ordered that the within order shall not be subject to the provisions of North Carolina General Statutes 50-16.9(a).

The order was consented to, in writing, by the parties and their attorneys.

On 19 October 1979 plaintiff filed a motion asking that the above order be modified so as to terminate or reduce his alimony obligation. Plaintiff alleged that there had been a material change in circumstances; that since the entry of said order, defendant had acquired substantial property; that her needs had materially decreased; that plaintiff's financial burdens had increased; and that his ability to make the monthly payments was steadily decreasing.

On 13 November 1979 defendant moved for judgment on the pleadings or, in the alternative, for summary judgment. One week later, and before a ruling on her motions, defendant filed a

Rowe v. Rowe

response to plaintiff's motion. In her response, defendant alleged that plaintiff had waived his right to seek modification; that he was estopped from seeking a modification; that the order of 6 December 1976, as a consent order, constituted a contract between the parties which the court could enforce but not modify; and that the court was prohibited by its own order from modifying the order. The response further denied that the circumstances of the parties had changed.

On 11 December 1979 Judge Clark, after a hearing, entered an order denying defendant's motion to dismiss, or, in the alternative, for summary judgment. However, in the order the court concluded that the 6 December 1976 order "is modifiable as provided by G.S. Sec. 50-16.9(a) . . . ." Defendant excepted to the entry of this order.

Thereafter, defendant supplemented her response to allege that the 6 December 1976 order was not modifiable because it was an inseparable part of the property settlement entered into by the parties. Defendant also amended her estoppel defense to allege the existence of a letter from plaintiff's attorney to her attorney which would establish plaintiff's estoppel by contract.

Plaintiff's motion for modification was heard by Judge McHugh. The evidence necessary to the decision of this appeal is not in conflict. The findings of fact made by Judge McHugh to which there was no exception are summarized in pertinent part as follows:

At the time of the entry of the 6 December 1976 consent order, defendant had a net worth of approximately $1.1 million. While she had no substantial income at that time, she owned 66.91% of the outstanding capital stock of a closely held corporation, Northwestern Equipment Company (Northwestern) which stock had an approximate fair market value of $847,000. Unappropriated retained earnings in Northwestern were, at or about the time of the entry of the consent order, approximately $698,000 and the assets of said corporation included cash in the approximate amount of $179,000. At or about the time said order was entered, plaintiff offered to purchase defendant's stock in Northwestern for at least the sum of $600,000.00, an offer which defendant declined to accept. Both parties were aware of Northwestern's financial condition at that time.

Defendant's present reasonable living expenses are greater than her reasonable living expenses were at the time of the entry of the consent order. At that time, plaintiff had a net worth of approximately $1.2 million and had a gross annual income of approximately $105,000. His living expenses at that time were approximately $6,100 per month.

On or about 1 September 1978, defendant sold her stock in Northwestern to H. B. Rowe & Co., Inc., a closely held corporation substantially owned by plaintiff and controlled by him, for the sum of $700,000 cash. From the sale's proceeds, defendant paid approximately $250,000 in taxes, fees, and other expenses associated with the sale. She immediately converted the net proceeds of approximately $450,000 into bonds and securities. "This entire transaction did not constitute the acquisition of an asset by the defendant; rather, it amounted to the liquidation or conversion of an asset."

Defendant's present net worth is approximately $850,000. The decrease in her net worth from December of 1976 is substantially attributable to (1) the decline in the fair market value of her Northwestern stock between December of 1976 and 1 September 1978, and (2) the tax consequences and other expenses incidental to the sale of her Northwestern stock. Aside from her alimony income from plaintiff, defendant's present income is derived almost entirely from the bonds and securities which she purchased with the liquidation proceeds obtained from the aforesaid stock sale. Defendant's non-alimony income in 1979 was approximately $54,000.

Plaintiff presently has a net worth in excess of $2 million. In addition, his taxable income has increased since 1976, and for the calendar year ending 31 December 1979 was approximately $160,000. While his monthly living expenses have increased from $6,100 per month in December 1976 to $8,100 at the present time, approximately $1,800 per month of that increase is directly attributable to support of his new wife and her adult children.

Defendant offered into evidence her affidavit of financial standing in which she averred that her financial needs as of 10 April 1980 amounted to $2,720.59 per month which would amount to $32,647.08 per year; that she had an income of $7,000 per

month ($84,000 per year) including $2,500 per month ($30,000 per year) in alimony from plaintiff.

In her testimony at the hearing, defendant stated that without any alimony being paid by plaintiff, her separate income is "well over what I spend for living expenses"; that this was not true on 6 December 1976; and that she had no appreciable income prior to said date.

The trial court entered an order concluding that there had been no change of circumstances sufficient to warrant modification of the 6 December 1976 order. The court also concluded that defendant was not entitled to attorney fees for defending against plaintiff's motion in the cause. Both parties appealed.

In an opinion by Judge Edward B. Clark, with Judge Wells concurring, the Court of Appeals held (1) that the 6 December 1976 order is modifiable, (2) that the determination by the trial court that there was no change in circumstances is not supported by the evidence, (3) that as a matter of law there was a change of circumstances as envisioned by the statute, and (4) that defendant is not entitled to recover attorney fees.

The Court of Appeals concluded that the trial court erred in not making more specific findings of fact relative to defendant's costs in maintaining her accustomed standard of living; that such findings of fact would provide a basis for determining in the future if there were a change of circumstances after entry of a modified order should defendant thereafter seek alimony on the grounds that changed circumstances had again made her a dependent spouse; and that these corrections can adequately be made by the court without further hearing, since it appears from the record that the uncontradicted evidence before the trial court is sufficient to support modification of the order. The Court of Appeals remanded the cause for findings and entry of an order consistent with its opinion.

Judge Vaughn dissented. Defendant appealed as a matter of right pursuant to G.S. 7A-30(2).

*Smith, Moore, Smith, Schell & Hunter, by Jack W. Floyd and Jeri L. Whitfield, for plaintiff.*

*Tuggle, Duggins, Meschan, Thornton & Elrod, P.A., by David F. Meschan, for defendant.*

BRITT, Justice.

We agree in part, but disagree in part, with the decision of the Court of Appeals. While we agree that a new hearing must be conducted by the trial court, we hold that the scope of the hearing must be extended beyond that ordered by the Court of Appeals.

I.

[1]  The primary question presented in this appeal is whether the consent order of 6 December 1976 is modifiable.

In *Bunn v. Bunn*, 262 N.C. 67, 136 S.E. 2d 240 (1965), this court, in an opinion by Justice (later Chief Justice) Sharp, held that there are two types of consent judgments which provide for payment of support to a dependent spouse. One is simply a contract that is approved by the court. The payments specified therein are not technically alimony. This type of consent judgment is enforceable only as an ordinary contract and the parties are not subject to the contempt power of the court for its breach. Consent of both parties is required for modification. *Id.*

In the second type of consent judgment, the court adopts the agreement of the parties as its own and *orders* the supporting spouse to pay the amounts specified as alimony. This second type of order is enforceable by the court's contempt powers. *Id.* Ordinarily it is also modifiable. Bunn, *supra.*

In the case at hand, were it not for the proviso in the 6 December 1976 consent order that G.S. 50-16.9 would not apply, *Bunn* no doubt would control this case. Usually, public policy would require that the consent order be modifiable in spite of this proviso.

Our legislature in 1967 codified the principles enunciated in *Bunn* by enacting G.S. 50-16.9. This statute provides in pertinent part:

> (a) An order of a court of this State for alimony or alimony pendente lite, whether contested or entered by consent, may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested . . . .

By enacting this statute, the legislature has clearly expressed that it is the public policy of this state that consent orders to pay alimony are modifiable. In the usual case a proviso in an order purporting to waive applicability of G.S. 50-16.9 would be contrary to this policy and, therefore, without force and effect.

Nevertheless, this court in *Bunn* and in *White v. White*, 296 N.C. 661, 252 S.E. 2d 698 (1979) recognized an exception to the rule just stated. We quote from the opinion by Justice Exum in *White*:

> Even though denominated as such, periodic support payments to a dependent spouse may not be alimony within the meaning of the statute and thus modifiable if they and other provisions for a property division between the parties constitute reciprocal consideration for each other.

296 N.C. at 666.

For purposes of determining whether a consent judgment may be modified under the statute, there is a presumption that the provisions for property division and support payments are separable. *Id.* The burden of proof rests on the party opposing modification to show that the provisions are not separable. *Id.*

**[2]** At the hearing before Judge McHugh, defendant attempted on two occasions to introduce evidence of the negotiations between the parties in an effort to show that the consent order and property settlement were reciprocal agreements. First, on cross-examination of plaintiff, and referring to the proviso on non-modification, defendant's attorney asked: "How do you recall that provision got into that order in the negotiating process?" Plaintiff objected to the question and his objection was sustained by the trial judge. The Court of Appeals found no error in this ruling on the ground that admitting evidence relating to the negotiations would violate the parol evidence rule that any or all parts of a transaction prior to or contemporaneous with a writing intended to record them are superseded and made legally ineffective by the writing. *Tomlinson v. Brewer*, 18 N.C. App. 696, 197 S.E. 2d 901 (1973); 2 Stansbury's N.C. Evidence § 251 (Brandis Rev. 1973).

We disagree with the trial court and the Court of Appeals that the testimony defendant sought to elicit on cross-examination would violate the parol evidence rule.

Rowe v. Rowe

Generally, evidence of prior and contemporaneous negotiations and agreements are not admissible to vary, add to, or contradict a written instrument. *Bailey v. Westmoreland*, 251 N.C. 843, 112 S.E. 2d 517 (1960); 2 Stansbury's § 251. However, when the court finds a contract to be ambiguous, evidence of prior negotiations is admissible to show the intent of the parties. *Root v. Ins. Co.*, 272 N.C. 580, 158 S.E. 2d 829 (1968). Further, the rule is intended to apply only to final, totally integrated writings; that is, those writings relating to a transaction which are intended to supersede all other agreements regarding that transaction. If the writing supersedes only a part of the transaction, it is a partial integration and other portions of the transaction may be shown by parol evidence. 2 Stansbury's § 252.

Turning to the case at bar, we reiterate that ordinarily the proviso in the 1976 consent order regarding non-modification would be without force or effect. In accord with G.S. 50-16.9, the consent order may be modified unless defendant can show that it was an integral part of the property settlement. *White v. White, supra.* The intention of the parties regarding the reciprocity of the agreements is not evident from a reading of the consent order. Therefore, evidence of the negotiations and contemporaneous property settlement agreements of the parties are admissible to clarify the uncertainty created when the non-modification provision of the order appears to be void as a matter of law. We also note that defendant does not seek to vary, add to or contradict the terms of the consent order. Indeed, she is merely trying to enforce the entire agreement as written.

Further, it is clear that the consent order represents only part of the total settlement between the parties. As such, it is only a partial integration of the total agreement and parol evidence is admissible to show the balance of the transaction. 2 Stansbury's § 252.

[3] The second effort made by defendant to prove that the consent order was an integral part of the property settlement was an attempt to introduce a letter written 18 November 1976[1] by plaintiff's then attorney to defendant's then attorney offering a settlement.

---

1. It will be noted that the consent order was entered on 6 December 1976.

The letter begins "I have talked with Henry Rowe again in an effort to settle all matters existing between Henry and Mary. At this time, by way of offer of compromise and settlement on Henry's behalf, I wish to advise the following . . . ." The letter lists eleven items including "3. Henry will pay to Mary alimony at the rate of $2,500 per month until her death or remarriage . . . ." Judge McHugh ruled that the letter was inadmissible because it was an offer of compromise or settlement. The Court of Appeals agreed with Judge McHugh's ruling. We disagree.

North Carolina follows the rule that an offer of compromise, as such, is never admissible *as an admission* of the party making it. *See Mahaffey v. Sodero*, 38 N.C. App. 349, 247 S.E. 2d 772 (1978); 2 Stansbury's § 180.

The reason for the rule excluding offers of compromise as evidence of liability is one of sound public policy encouraging the settlement of disputes out of court. In addition, although a consciousness of liability may be inferred from such an offer, an offer of compromise is also consistent with the desire of an offeror to buy his peace. 2 Stansbury's § 180. However, the fact that evidence is incompetent for one purpose will not affect its admissibility for other proper purposes. Relevant evidence will be admitted if competent for any purpose. 1 Stansbury's § 79; McCormick on Evidence § 59 (2nd Ed. 1972).

The letter of 18 November 1976 is obviously inadmissible as proof of plaintiff's liability to pay defendant alimony. The issue of defendant's entitlement to alimony was determined in the consent order and is *res judicata*. Further, defendant's entitlement is not in dispute. The question at bar is the modifiability of the consent order requiring plaintiff to pay alimony. Modifiability of the consent order depends on whether the order was an integral part of the entire property settlement.

We hold that the letter of 18 November 1976 is admissible as evidence of the reciprocity of the consent judgment and property settlement, an issue separate and independent from that of plaintiff's liability to pay alimony. We caution, however, that the letter is not in itself proof of defendant's contention. Defendant has the burden of showing by a preponderance of the evidence that the provisions of the consent order and property settlement were inseparable. *White v. White, supra.*

We hold that this case must be remanded for a hearing on the issue of whether the provision for alimony was an integral part of the parties' property settlement.

II.

[4]   We next address the question whether there has been a change in circumstances sufficient to warrant modification of the alimony decree. Addressing this question becomes necessary in the event it is determined that the consent order was not an integral part of the parties' property settlement. On this point we agree with the Court of Appeals.

As a general rule, the changed circumstances necessary for modification of an alimony order must relate to the financial needs of the dependent spouse or the supporting spouse's ability to pay. *See Britt v. Britt*, 49 N.C. App. 463, 271 S.E. 2d 921 (1980); *Stallings v. Stallings*, 36 N.C. App. 643, 244 S.E. 2d 494, *cert. denied*, 295 N.C. 648, 248 S.E. 2d 249 (1978). Our primary concern on this appeal is the change in financial needs of the defendant as a dependent spouse.

To determine whether a change of circumstances under G.S. 50-16.9 has occurred, it is necessary to refer to the circumstances or factors used in the original determination of the amount of alimony awarded under G.S. 50-16.5. That statute requires consideration of the estates, earnings, earning capacity, condition, accustomed standard of living of the parties and other facts of the particular case in setting the amount of alimony.

Defendant argues that there is a distinction between G.S. 50-16.9 and G.S. 50-16.5 and that the above interpretation allows the trial court to retry the issues tried at the original hearing. This argument is not valid. The statutes codified as G.S. 50-16.1 through G.S. 50-16.10 all deal with the same subject matter, alimony, and are to be construed *in pari materia. Williams v. Williams*, 299 N.C. 174, 261 S.E. 2d 849 (1980). So construed, the change in circumstances in G.S. 50-16.9 logically refers to those circumstances set forth in G.S. 50-16.5. Plaintiff's status as the supporting spouse, defendant's status as the dependent spouse and her entitlement to alimony were permanently adjudicated by the original order.

The uncontested facts in this case show that when the consent order of 6 December 1976 was entered, defendant's expenses exceeded her income of less than $9,000. Her net worth at that time was approximately $1.1 million. After the sale of her Northwestern stock and reinvestment of the proceeds, her non-alimony income in 1979 exceeded $54,000.00. Defendant's expenses that year were $32,400.00 leaving her more than $21,000 in income over expenses exclusive of any alimony. We agree with the Court of Appeals that under these facts, there has been a change of circumstances as a matter of law.

Defendant's change in her financial holdings from a passive investment in Northwestern to investments actively producing income was voluntary. When she did this, defendant changed her need for maintenance and support. Defendant is not depleting her estate to meet her living expenses. Her income derives almost exclusively from interest earned on her investments. Defendant herself admitted that "my separate income is well over what I spend for living expenses. No, that was not true on December 6, 1976."

In *Williams v. Williams, supra,* we said:

Nothing in this decision is designed to allow plaintiff to increase her wealth at the expense of defendant. Under the guidelines established, plaintiff would be required to continue in expending *all* of her annual income if she desires to maintain her present standard of living. Should the wife's capital assets increase in value, through inflation, prudent investment or otherwise, and results in an increase in her income, defendant would, of course, be entitled to petition the court for modification of the alimony order under G.S. 50-16.1.

299 N.C. at 184. *See also Sayland v. Sayland,* 267 N.C. 378, 148 S.E. 2d 218 (1966).

If it is determined that the consent order was not an integral part of the property settlement, plaintiff is entitled to a modification of the order requiring him to pay $2,500.00 per month in alimony. We emphasize, however, that defendant can rely on the original finding of entitlement in the consent order.

### III.

[5] Defendant lastly contends that she is entitled to attorney fees incurred in resisting plaintiff's motion in the cause. To be entitled to attorney fees it must be shown that they were necessary to enable the dependent spouse, as litigant on substantially even terms by making it possible for her to employ counsel. *Williams v. Williams, supra.* The dependent spouse must be unable to defray the necessary expenses of the litigation. *Hudson v. Hudson,* 299 N.C. 465, 263 S.E. 2d 719 (1980). Considering defendant's current financial status we find her argument without merit. She is clearly able to defray the expenses of the litigation. An award of attorney fees in this case is not necessary to enable defendant as litigant to meet plaintiff as litigant on substantially even terms.

### IV.

This cause is remanded to the Court of Appeals. That court will vacate the order appealed from and will remand the cause to the trial court (1) for further hearing and determination of the issue of whether the consent order was an integral part of the parties' property settlement; (2) for specific findings relative to defendant's costs in maintaining her accustomed standard of living as ordered by the Court of Appeals; and (3) for entry of a new order consistent with this opinion.

Affirmed in part; reversed in part and remanded.

Justice COPELAND concurring in part, dissenting in part.

I initially concur with the majority's conclusion that the defendant-wife would not be entitled to attorney fees in this action because of her ample individual financial resources. As a subsidiary position only, I additionally agree that, at the very least, the case must be remanded to the trial court "for further hearing and determination of the issue of whether the consent order was an integral part of the parties' property settlement. . . ." However, I must firmly dissent from the majority's decision upon the more important threshold issues presented in this appeal. In so doing, I join ranks with Judge Vaughn, who dissented in this case at the Court of Appeals, for the same fundamental reasons he stated at 52 N.C. App. 646, 662, 280 S.E. 2d 182, 191 (1981).

### I.

The majority holds that the alimony provisions of the consent judgment in question are generally modifiable pursuant to G.S. 50-16.9 despite the parties' express agreement therein to the contrary. This holding is premised only upon a notion of implied statutory public policy. To the contrary, I am persuaded that the basic principles of common sense, fundamental fairness and freedom of contract oppose the result reached by the majority whereby this husband is given an *opportunity* to benefit at the expense of his former wife's detrimental reliance upon his original *absolute* promise to pay the specified alimony irrespective of the future financial circumstances of *either* party.[1] I vote to enforce the plain unambiguous terms of the consent judgment as it stands and would hold that the plaintiff-husband is thereby estopped from seeking *any* reduction in the alimony obligation he incurred just one day prior to his receipt of an uncontested divorce from the defendant-wife.

As a general matter, I agree that where, as here, a consent judgment is adopted by a court order, its alimony provisions *may be* judicially modified upon a subsequent demonstrated change in circumstances. G.S. 50-16.9; *Holsomback v. Holsomback,* 273 N.C. 728, 161 S.E. 2d 99 (1968); *Bunn v. Bunn,* 262 N.C. 67, 136 S.E. 2d 240 (1964). Even so, it must be remembered that a consent judgment, regardless of its legal setting, is still contractual in nature; consequently, its terms should be interpreted according to: (1) the parties' expressed intent in light of the surrounding circumstances existing at the time of entry and (2) the obvious purposes intended to be accomplished by its entry. *Any* consent judgment should be construed as it is written, and our courts should refrain from actions which effectively ignore or nullify the language or

---

1. It is to be noted that the combined holdings of the majority opinion completely remove the burden of proof from the plaintiff-husband and place the onerous duty of justifying her entitlement to future alimony upon the defendant-wife. The husband is permitted to seek modification, and he is simultaneously relieved, *as a matter of law*, from the further obligation of showing, as the movant in the cause, the existence of a *bona fide* change in circumstances requiring a reduction in alimony. The only option graciously left to the former wife, who could not have possibly anticipated that an essential part of the marital agreement was void (the anti-modification provision), is for *her* to shoulder the burden of presently proving that the fixed alimony award was an integral part of the overall settlement of the marital property.

provisions included therein. *See Spruill v. Nixon*, 238 N.C. 523, 78 S.E. 2d 323 (1953); *Webster v. Webster*, 213 N.C. 135, 195 S.E. 362 (1938); *Jones v. Jones*, 42 N.C. App. 467, 256 S.E. 2d 474 (1979); *Price v. Horn*, 30 N.C. App. 10, 226 S.E. 2d 165, *discretionary review denied*, 290 N.C. 663, 228 S.E. 2d 450 (1976); *Martin v. Martin*, 26 ·N.C. App. 506, 216 S.E. 2d 456 (1975). *See generally* 8 Strong's North Carolina Index 3d, Judgments § 10, at 28; 47 Am. Jur. 2d, Judgments §§ 1085, 1087 (1969). I simply fail to understand why the judicial adoption of a consent judgment entered in a marital dispute is such a unique event that it *automatically* negates the contractual ability and manifested mutual intent of the parties to forbid specifically any future modification of their private alimony award.

Moreover, I can perceive no inherent statutory offense in permitting marital parties to stipulate, if they so wish, that the amount of designated alimony shall never be increased or decreased (except in the case of death or remarriage). In any situation, people enjoy the sense of inner security that comes from knowing that something cannot be changed—that no matter how the winds of future fortune blow, something essentially relied upon will remain the same and can be counted upon. Why then should it be objectionable for marital parties to ensure their financial status and to settle *everything* between them once and for all by joining in a consensual provision against modification of the agreed amount of alimony? After all, the parties themselves are best qualified to deal with a division of their marital property and a settlement of their marital rights in the first instance. When the parties are willing and able to negotiate about these matters on a comprehensive level, our courts should, so far as it is practicable and reasonable, encourage them to do so on their own without impeding their progress with artificial and unnecessary legal hindrances. Indeed, an *implicit and absolute* statutory prohibition, like the one read into G.S. 50-16.9 by the majority, against the *final* settlement of an alimony issue by the parties primarily concerned, would almost seem tantamount to an invasion of marital privacy without sufficient rhyme or reason.

I believe that the parties to the marriage should, as ordinary bargaining agents, be able to reach a complete agreement about their affairs, satisfactory to themselves, which includes a safeguard provision against future alimony modification. Whether

or not that agreement is incorporated into a judicially-adopted consent judgment is, to me, irrelevant. Our courts should have the power to declare a consensual anti-modification provision null and void on a case-by-case basis *only*, *i.e.*, when it is affirmatively proven by the *movant* that the provision is unconscionable because it was not supported by adequate consideration or it was not freely, voluntarily or intelligently assented to due to duress, overbearing, fraud, or lack of legal representation. Such is clearly not the case here. These wealthy parties were individually represented by two reputable law firms. As an intricate and inextricable part of the underlying bargaining process concerning their impending divorce, the parties mutually consented to an explicit, plainly worded contractual limitation of a legal remedy, that of future judicial modification of the alimony award, which was duly supported by reciprocal consideration. The record refutes the plaintiff-husband's contention that alimony modification was necessary because he no longer had the actual financial ability to pay the specified sum.[2] Despite his prior agreement, he really sought a reduction of his former wife's alimony upon the mere ground that, due to a stock transaction *between them*, she had an increased cash income.[3] Under these circumstances, enforcement of the anti-modification provision in the consent judgment could not possibly cause insult or injury to the letter and spirit of the legislative directive in G.S. 50-16.9.

II.

My second bone of contention with the majority opinion is its further holding that the facts of this case disclose a change in circumstances *sufficient to warrant a major modification (a complete reduction) of the alimony provided in the consent order as a mat-*

---

2. Obviously, the court's contempt powers could not be used to enforce an absolute alimony obligation in an adopted consent judgment when it appears that the party to be charged actually lacks the financial ability to pay the agreed sum. Inability to pay would perforce negate the existence of a willful or intentional refusal to obey a court order.

3. In the improperly excluded evidence regarding the parties' negotiations, see Part I of the majority opinion, it appears that Mr. Rowe knew what the consent order said when he signed it and consequently did not intend at that time ever to seek a modification of its provisions. In fact, Mr. Rowe stated that "[i]t first occurred to [him] to seek a modification of this Order after H. B. Rowe & Co. bought Mrs. Rowe's stock in Northwestern Equipment Company in September of 1978." Record at 47.

*ter of law.* In dissenting upon this point, I am guided by three basic legal principles: (1) the party seeking modification of an order of support has the burden of proving, by a preponderance of the evidence, the occurrence of the requisite change in circumstances; (2) the legal standard of changed circumstances only encompasses material or substantial factual differences which presently make it unduly burdensome for the movant to comply with the original order; and (3) the trial court's initial determinations in these kinds of matters, if supported by competent evidence in the record, should be accorded great weight on appeal and not disturbed absent a clear abuse of discretion. *See Clark v. Clark,* 301 N.C. 123, 128-29, 271 S.E. 2d 58, 63 (1980); *Sayland v. Sayland,* 267 N.C. 378, 382-83, 148 S.E. 2d 218, 221-22 (1966); *Britt v. Britt,* 49 N.C. App. 463, 470, 271 S.E. 2d 921, 926 (1980); 2 Lee, North Carolina Family Law § 152, at 237 (4th ed. 1980). On this record, I find that plaintiff did not fulfill *his burden* of demonstrating a *substantial* change in circumstances, and therefore I would vote to affirm Judge McHugh's order of 29 April 1980 in which he concluded that there had *not* been "a change in the circumstances of the parties which would warrant or justify modification in the plaintiff's favor of the December 6, 1976 Consent Order."

Judge McHugh's legal conclusion, *supra,* was based upon the following pertinent findings of fact, which were amply supported by the evidence: (1) that defendant's reasonable living expenses had increased since the original order; (2) that her net worth during the period had decreased due to the decline in value of her Northwestern stock; (3) that her conversion of the net proceeds from the sale of her Northwestern stock into income-yielding bonds and securities was merely the liquidation of an asset, not the acquisition of an asset; and (4) that apart from her alimony income, her present income was derived solely from the foregoing bonds and securities. On the other hand, Judge McHugh found that plaintiff's net worth had increased by approximately one million dollars, his taxable income had increased, and his reasonable living expenses had increased only due to the support of a new wife and her adult children. Balancing all of these circumstances together, I am not persuaded, as the majority apparently is, that Judge McHugh abused his discretion as a matter of law by failing to *single out* the stock transfer between the par-

ties, and defendant's subsequent income from investment of the proceeds therefrom, as a sufficient change in circumstances for modification of the alimony award in the consent order.

At most, the stock transaction between these parties, which involved a company then jointly owned by them, was an *exchange of* circumstances, not a *change in* circumstances. In fact, it was not an unanticipated exchange—this precise stock transfer was originally contemplated by both parties before the consent judgment was entered. Record at 35-36, 53. More importantly, it was an exchange which was financed in large part by the very asset the defendant-wife transferred to her former husband. After the 1976 divorce, defendant did not receive any dividends whatsoever from Northwestern although such cash was certainly available to her as a substantial stockholder for a reasonable return upon her investment. Record at 54-56. Nevertheless, the plaintiff later withdrew $300,000 in cash from the company itself to enable him to buy out defendant for the total price of $700,000. Record at 36. Ironically then, and I believe unfairly so, defendant was essentially paid in part for her stock with her own money. As if this were not enough, the majority finds that, as a result of the stock transaction, the defendant is no longer entitled to receive any alimony from the plaintiff.

In addition, I am not convinced, as apparently the majority is, that defendant's decision to convert her asset into an income-producing form was entirely voluntary. Consider her following testimony:

As to why I sold my stock in Northwestern, well, I had—had not—had refused a previous offer because I felt like that was, really, my only ace in the hole was the equipment company if I ever needed money or cash or anything like that. So I wanted to keep my stock. But then I realized that it was not being—no new equipment was being purchased for them. I had no way of knowing when it was being used, how it was being used, what hours it was being used, if it was being repaired or—I had no rental contracts; I had one customer. And I felt like that since that customer was somewhat angry and upset with me, that it possibly was not being run as it should have been run, and that—its net income dropped drastically. And so I felt like that the time had

Rowe v. Rowe

come when I'd better get out, because depreciation and disuse, and I had no use for a pile of scrap iron. Record at 53-54.

The true nature of the situation was that plaintiff continued to manage Northwestern after the divorce, and Northwestern's only "customer" was another company wholly owned and operated by the plaintiff. Surely, it is understandable that, after the divorce, plaintiff and defendant were unwilling partners, and effective business communication between them was difficult. Can it then be doubted that defendant acted prudently, and not necessarily voluntarily, in eventually selling out to her former husband when she began to note a dramatic decrease in the company's net income?[4]

For the foregoing reasons, I strongly disagree that this record demonstrates a *bona fide* change in circumstances which justifies plaintiff's entitlement to modification as a matter of law. Under these facts, the majority effectively penalizes the defendant for investing wisely the cash proceeds of a sale which she was practically forced to make to her former husband in the exercise of sound business judgment. I assume that, under the majority opinion, the plaintiff would have had no basis for modification of alimony if defendant had simple-mindedly and wastefully stuffed her mattress with the cash proceeds of the sale and as a result produced no additional income thereby. *Compare* with the biblical parable of the talents, Matthew 25:14-30. In sum, I would not rob defendant of the fruits of her exchange and unjustly give them to plaintiff by nullifying his obligation to pay $30,000 a year in alimony.[5]

Justices CARLTON and MEYER join in this dissenting opinion.

---

4. Certainly, the evidence suggests that the defendant was the victim of a classic corporate "squeeze play."

5. It is a minor consolation indeed that defendant *may* avoid alimony modification at the rehearing if *she* can prove that the specified amount was an integral part of the overall marital settlement. Under the facts of this case, she clearly should not have to bear that burden. *See* note 1, *supra*.