HENRY B. ROWE v. MARY W. ROWE

No. 8417DC627

(Filed 2 April 1985)

1. Divorce and Alimony § 19.5— property settlement and alimony inseparable— evidence of negotiations supports findings

The trial court's finding that a property settlement and consent judgment for alimony were intended as reciprocal and inseparable parts of a single agreement and so were not modifiable was supported by evidence that the parties negotiated a domestic settlement over an eight-month period through a series of proposals and counter-proposals made via letters exchanged by their

lawyers, that alimony was listed with suggestions for division of various items of property in the letters, that when the amount of the periodic payment was adjusted during negotiations changes were also made in other items, and that defendant testified that her intent from the start had been to settle the alimony and property matters together and that the agreement would not have been consummated if any points had been left out.

**2. Process § 6— subpoena duces tecum quashed—no abuse of discretion**

   The trial judge did not abuse his discretion when he granted defendant's motion to quash plaintiff's subpoena duces tecum as to certain documents in the file of one of defendant's attorneys. The documents were examined *in camera* and contained little or no information relevant or material to the issues in the case. G.S. 1A-1, Rule 52(6)(2).

APPEAL by plaintiff from *John, Judge.* Judgment entered 9 February 1984 and filed 20 February 1984 in District Court, GUILFORD County, after being heard out of district by and with the parties' consent; judgment filed 13 February 1984 in SURRY County. Heard in the Court of Appeals 5 March 1985.

This case is before this Court for the second time, after having been remanded by the North Carolina Supreme Court pursuant to its opinion of 3 March 1982. *Rowe v. Rowe,* 305 N.C. 177, 287 S.E. 2d 840 (1982).

The primary issue in this case is whether a consent order between the parties, providing for the payment of "alimony," is subject to modification. The consent order contained a proviso that it would not be modifiable as provided by G.S. 50-16.9(a). In the first appeal of this case, this Court found that the proviso was void as against public policy. 52 N.C. App. 646, 656-58, 280 S.E. 2d 182, 188-89 (1981). The North Carolina Supreme Court noted also that such a proviso would ordinarily be contrary to public policy and so without force and effect. 305 N.C. 177, 184, 287 S.E. 2d 840, 844 (1982). Yet, the Supreme Court recognized an exception to this rule in cases where the provisions for "alimony," or periodic payments, in the consent order were intended as reciprocal consideration for the provisions of a property settlement. *Id.* The Supreme Court thus remanded the present case for a rehearing on the question of whether the consent order was an integral part of the parties' property settlement, and not true alimony, and therefore not modifiable according to statute.

On remand, the trial court found that the parties intended that the consent order be an integral part of the property settlement, and concluded that the consent order was therefore not modifiable.

In the course of admitting new evidence on remand, the trial court granted defendant's motion to quash a subpoena duces tecum as to certain documents (Court Exhibit 1).

The plaintiff appeals the trial court's judgment and its grant of the motion to quash as to Court Exhibit 1.

*Smith Moore Smith Schell & Hunter, by Jack W. Floyd and Jeri L. Whitfield, for plaintiff appellant.*

*Tuggle Duggins Meschan & Elrod, by David F. Meschan and William R. Sage, for defendant appellee.*

JOHNSON, Judge.

In its opinion in *Rowe v. Rowe*, 305 N.C. 177, 287 S.E. 2d 840 (1982), the North Carolina Supreme Court remanded this case to determine whether a consent order providing for payment of alimony was an integral part of a property settlement. On remand, the trial court decided that it was, and concluded that the consent order accordingly was not modifiable under G.S. 50-16.9(a). The plaintiff contends on appeal that the trial court erred in finding that the consent order was an integral part of the property settlement.

We note that this case is not subject to the rule of *Walters v. Walters*, 307 N.C. 381, 298 S.E. 2d 338 (1983): that any time the parties to a separation agreement bring that agreement before a court for approval, the agreement will no longer be treated as a private contract between the parties. The *Walters* rule was made applicable only to the judgment appealed in that case and to judgments entered after the entry of the *Walters* opinion. Accordingly, this case is governed by *Bunn v. Bunn*, 262 N.C. 67, 136 S.E. 2d 240 (1964), and *White v. White*, 296 N.C. 661, 252 S.E. 2d 698 (1979), both of which the North Carolina Supreme Court relied upon in 1982 when it remanded the present case. In *Bunn* and *White*, and in the 1982 *Rowe* opinion, our Supreme Court recognized that the alimony provisions of some separation agree-

ments approved by courts are not modifiable under G.S. 50-16.9(a). These agreements include those where, although the separation agreement has been adopted as an order of the court and the provisions for periodic payment are called "alimony," "they and other provisions for a property division between the parties constitute reciprocal consideration for each other." *White*, 296 N.C. at 666, 252 S.E. 2d at 701. As Justice (later Chief Justice) Sharp wrote in *Bunn v. Bunn*:

> [I]f the support provision and the division of property constitute a reciprocal consideration so that the entire agreement would be destroyed by a modification of the support provision, they are not separable and may not be changed without the consent of both parties.

*Bunn*, 262 N.C. at 70, 136 S.E. 2d at 243.

We now review the Supreme Court's instructions to the trial court in its 1982 opinion in the present case. First, the Court placed the burden of proof on defendant, who claims the consent order and property settlement are part of one agreement:

> For purposes of determining whether a consent judgment may be modified under the statute, there is a presumption that the provisions for property division and support payments are separable. [Citation omitted.] The burden of proof rests on the party opposing modification to show that the provisions are not separable. [Citation omitted.]

*Rowe*, 305 N.C. at 184, 287 S.E. 2d at 844.

Then, the Court found that, given the ambiguity in the consent order, the trial court should have allowed the defendant to introduce evidence of the negotiations of the parties in order to show that the parties intended that the consent order and property settlement were reciprocal agreements.

> In accord with G.S. 50-16.9, the consent order may be modified unless defendant can show it was an integral part of the property settlement. *White v. White, supra.* The intention of the parties regarding the reciprocity of the agreements is not evident from a reading of the consent order. Therefore, evidence of the negotiations and contemporaneous property settlement agreements of the parties are [sic] ad-

missible to clarify the uncertainty created when the non-modification provision of the order appears to be void as a matter of law.

*Rowe*, 305 N.C. at 185, 287 S.E. 2d at 845.

On remand, the trial court heard evidence of the negotiations of the parties, and found that the defendant met her burden of showing that the parties intended the consent order to be an integral part of the property settlement. We must now consider whether the trial court's findings of fact are supported by any competent evidence, *see Allison v. Allison*, 51 N.C. App. 622, 628, 277 S.E. 2d 551, 555, *disc. rev. denied*, 303 N.C. 543, 281 S.E. 2d 660 (1981).

[1] In its judgment of 9 February 1984, the trial court found the following facts. The parties negotiated a domestic settlement over an eight-month period through a series of proposals and counter-proposals made via letters exchanged by their lawyers. In this period, at least eight letters were exchanged, five of which were from plaintiff's counsel and three of which were from defendant's counsel. The first two letters contained no mention of proposed "alimony" or support payments. Yet, beginning with the letter of 26 April 1976, from defendant's counsel to plaintiff's counsel, each letter contained a proposal for "alimony," or periodic payments, listed as one of several numbered points addressing the overall settlement terms.

The trial court found that the letters indicated the parties' intent to settle all issues, including that of the periodic payments. Moreover, he found that the letter of 2 December 1976 memorialized entirely the final negotiated agreement between the parties, settling the division of property and income, and that the consent order of 6 December 1976 implemented the provision in the letter of 2 December for payments of $2,500 per month, designated "alimony."

We have reviewed the series of letters, and we agree that they support the trial judge's findings. In particular, they reflect the parties' intent that the terms concerning the "alimony" payments and the property division were given for each other and are part of one agreement. The letters show that the defense counsel originally proposed periodic payments of $5,000 per month, while the plaintiff's counsel offered $2,000. In subsequent

letters, the defense reduced its proposal to $3,000 and then accepted plaintiff's proposal of $2,500. In each of the letters, the alimony proposal was listed with suggestions for division of various items of property, and each time the "alimony payments" were adjusted, changes were also made in certain of the other items. The letters suggest that the defendant was willing to accept lower payments in exchange for a more advantageous division of the property.

We find it significant that defendant's first proposal of alimony, in the letter of 26 April 1976, came in response to plaintiff's first detailed proposal for a division of the property. In the letter of 26 April, defendant's lawyer expressly stated that the "alimony" was essential to the property settlement: "We must, of course, have alimony in addition or some settlement in lieu of alimony."

The defendant's testimony supports further the conclusion that the agreement as to the "alimony" payments was essential to the property settlement. The defendant testified that her intent from the start had been to settle the alimony and property matters together, and that it was also never her intent to settle the property matters without settling the alimony matters, and vice versa. Finally, defendant testified that if any of the points had been left out of the agreement, the agreement would not have been consummated, so far as she was concerned. Plaintiff never contradicted or rebutted this testimony.

We agree with the trial judge's finding that the letters expressly indicate an intent to settle all issues, including that of periodic payments. We agree that the letter of 2 December 1976 (Defendant's Exhibit 25) indicates an intent that the terms of the entire settlement were finalized and agreed to by both parties. This letter provided that a consent order would be entered in plaintiff's action for divorce in order to implement the payment of "alimony."

Competent evidence thus supports the trial court's findings, and in particular, his finding that the property settlement and the consent order were intended as reciprocal and inseparable parts of a single settlement agreement. The trial court's conclusion that the consent order is not modifiable is supported by his findings.

[2]   We reach now plaintiff's contention that the trial court erred in granting defendant's motion to quash the subpoena duces tecum directed to David Meschan, defendant's attorney, with respect to documents labeled Court Exhibit 1. The subpoena duces tecum was issued to Mr. Meschan, when the other defense attorney, Mr. P. M. Sharpe, who was also served with such a subpoena, stated that he had given files relating to his representation of defendant to Mr. Meschan. Mr. Meschan filed a motion to quash the subpoena on grounds of attorney-client privilege, work product privilege, and relevancy. Mr. Meschan produced the entire contents of Mr. Sharpe's files for an *in camera* inspection by the trial judge. After *in camera* review, the trial judge ruled that certain documents (Court Exhibit 2) were producible, and that the remaining ones (Court Exhibit 1) were not. The plaintiff objects to the trial court's ruling as to Court Exhibit 1. His objection has no merit.

Whether to allow an *in camera* inspection and whether to release some or all of the documents at issue, or parts of some of those documents, is a matter within the discretion of the trial judge. *See Midgett v. Crystal Dawn Corp.*, 58 N.C. App. 734, 736, 294 S.E. 2d 386, 387 (1982); *Willis v. Duke Power Co.*, 291 N.C. 19, 36, 229 S.E. 2d 191, 201 (1976). Our review of the documents in Court Exhibit 1 reveals little or no information which is material and relevant to the issues in this case, or which might lead to the discovery of admissible evidence. Plaintiff is not entitled to a fishing expedition. *See Dworsky v. Travelers Ins. Co.*, 49 N.C. App. 446, 448, 271 S.E. 2d 522, 524 (1980).

The trial judge made no formal findings when he ruled on the motion to quash. Since neither party requested such findings, the Rules do not require that he should have done so. N.C.R.C.P. 52(a)(2). In the absence of findings, we may presume that the trial court also recognized the absence of relevancy and materiality of the information in Court Exhibit 1. Without reaching the questions of attorney-client privilege and work product doctrine, we hold that the trial court did not abuse his discretion in granting defendant's motion to quash the subpoena duces tecum as to Court Exhibit 1.

We affirm the judgment of the trial court.

Affirmed.

Judges EAGLES and PARKER concur.