DORIS-MARIE MARTIN, Plaintiff v. RUSSELL M. MARTIN, Defendant

No. COA09-1454

(Filed 7 September 2010)

**1. Divorce— alimony—modification of alimony—change of circumstances—dependant spouse—no error**

The trial court did not err in concluding that plaintiff was entitled to an increase in monthly alimony payments from defendant. The trial court's findings of fact were supported by competent evidence, and those findings supported the conclusion that a change of circumstances required modification of the alimony order.

**2. Attorney fees— modification of alimony—dependant spouse —no error**

The trial court did not err in concluding that plaintiff was entitled to attorney fees pursuant to N.C.G.S. § 50-16.4. Plaintiff was the dependent spouse, entitled to a modification of alimony, and did not have sufficient means to defray necessary expenses as her current expenses outweighed her income.

**3. Costs— expert witness fees—modification of alimony—dependant spouse—error**

The trial court erred in awarding plaintiff expert witness fees in a modification of alimony case. Plaintiff's expert was not subpoenaed to testify and there is no statutory authority in N.C.G.S. § 50-16.4 for the imposition of expert fees.

Appeal by defendant from judgment entered 21 November 2008 by Judge Marvin P. Pope, Jr., in Buncombe County District Court. Heard in the Court of Appeals 15 April 2010.

*Gum, Hillier & McCroskey, P.A., by Howard L. Gum, and Carter & Kropelnicki, P.A., by Steven Kropelnicki, Jr., for plaintiff.*

*The McDonald Law Office, P.A., by Diane K. McDonald, for defendant.*

ELMORE, Judge.

This appeal stems from Doris-Marie Martin's (plaintiff) alimony modification request and subsequent order, entered 21 November 2008, which increased Russell M. Martin's (defendant) alimony obligation to

$4,400.00 a month. Plaintiff and defendant were divorced on 1 April 1983. Following the divorce, the parties entered into a consent judgment on 30 April 1984 (1984 judgment) which, among other things, required defendant to pay monthly alimony in the amount of $2,425.00 to plaintiff until death or her remarriage and to continue carrying life insurance with plaintiff as the beneficiary. On May 1990, pursuant to the 1984 judgment, defendant's obligation was reduced to $1,540.50 a month after he satisfied the indebtedness on the marital home.

On 11 December 1998, plaintiff filed a motion to modify the prior order, requesting an increase in monthly payments because her income was not sufficient to meet her reasonable and necessary expenses. On 5 May 1999, defendant responded in opposition to an increase in alimony with a request to reduce the alimony obligation. The court modified the alimony order on 17 April 2001 (2001 order), requiring defendant to pay $2,600.00 a month. On 26 February 2007, defendant filed a motion to reduce the amount of alimony resulting from the 2001 modification and to reduce the amount of life insurance he was required to carry under the 1984 judgment. Plaintiff filed a motion to increase the alimony award, citing a substantial change in circumstances, on 31 July 2008. On 21 November 2008, the trial court granted plaintiff's request for an increase in alimony, awarded her attorneys' fees, and held that the remaining portions of the 2001 order were to remain in full effect. Defendant now appeals.

## I. Modification of 2001 Order

[1] Defendant first argues that the trial court erred when it concluded that plaintiff was entitled to an increase in monthly alimony payments. According to N.C. Gen. Stat. § 50-16.9, an alimony award "may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested." N.C. Gen. Stat. § 50-16.9 (2009). In general, the change of circumstances required for modification of an alimony order "must relate to the financial needs of the dependent spouse or the supporting spouse's ability to pay." *Rowe v. Rowe*, 305 N.C. 177, 187, 287 S.E.2d 840, 846 (1982). A court should also consider the sixteen factors listed in N.C. Gen. Stat. § 50-16.3A(c) when considering modification of an alimony order; among those factors are the relative earnings of the spouses and relative needs of the spouses. *Swain v. Swain*, 179 N.C. App. 795, 800, 635 S.E.2d 504, 507 (2006). "Decisions regarding the amount of the alimony are left to the sound discretion of the trial judge and will not be disturbed on appeal unless there has been a manifest abuse of that

discretion." *Bookholt v. Bookholt*, 136 N.C. App. 247, 249-50, 523 S.E.2d 729, 731 (1999) (citation omitted), *superseded by statute in part*, N.C. Gen. Stat. § 50-16.9(b) (2009).

Defendant states that the trial court erred in numerous findings of fact because they were not supported by evidence. Specifically, he claims that findings of fact pertaining to his net worth, plaintiff's expenses, and plaintiff's income were not supported by evidence, and as such the trial court's conclusion of law that "changed circumstances" exist is in error. We consider each of these findings of fact in turn below, but we first consider defendant's overall arguments regarding the trial court's order.

Regarding his net worth analysis, defendant argues that his income is limited to Social Security, an annuity, and a retirement account that is depleting rather quickly. He claims that he will not have the ability to pay an increase in alimony. However, evidence presented at trial showed that defendant still had $263,709.00 in a Merrill Lynch retirement account and that he had elected to take a distribution of $123,000.00 for 2008. According to finding of fact 38, defendant has a total of $6,763.00 in expenses per month or $81,156.00 in expenses per year. The court also found in finding of fact 39 that half of that amount, $3,382 monthly or $40,578.00 yearly, should be considered the expenses of defendant's current spouse. As such, defendant received $82,422.00 more from the distribution of his retirement account than was necessary to cover his expenses. We decline therefore to hold that the trial court erred in its conclusion that defendant's "excess expenditures were voluntary on the part of the defendant, and unreasonable in view of his obligation to pay alimony to the plaintiff."

Concerning plaintiff's expenses, defendant argues that the increases in plaintiff's needs stem from two "unexplained" mortgages on her home and her choice not to obtain full-time employment. However, the evidence presented at trial regarding the mortgages showed that plaintiff (1) refinanced her home to pay off the first mortgage on the home and to meet increases in taxes, insurance, and maintenance on the 36-year-old home; and (2) borrowed from equity to make repairs to the home after a tree fell on it. Plaintiff presented evidence that the home needed a new boiler system, which cost over $15,000.00, and also produced receipts for 2008 showing that she spent over $15,000.00 in maintenance, which includes the amount for repair from the fallen tree.

As to plaintiff's employment status, the evidence presented at trial showed that she had to miss time from work after the city condemned her home in order to "contend with the inordinate amount of time necessary for dealing with her insurance company, city building inspectors, contractors, roofers, painters and the other multitude of people need [sic] to get her house repaired[.]" As she prepared to return to work, she "broke two toes, one on each foot, and her doctor kept her out of work for several more weeks[.]" These circumstances resulted in plaintiff's income being substantially less in 2008.

Having addressed defendant's general arguments, we now turn to his arguments concerning specific findings of fact in the trial court's order modifying alimony.

Defendant alleges that the court erred in finding of fact 5, which states that the 1984 judgment provided that his alimony obligation "be reduced once he had discharged the indebtedness encumbering the residence of the Plaintiff[.]" Evidence presented by plaintiff showed that the mortgage was paid off by a second mortgage, which increased the debt on the house in order to pay for necessary repairs, and which was found to be "necessary and reasonable" by the trial court in the 2001 order. As such, this assignment of error is overruled.

Defendant next challenges finding of fact 7, which states that plaintiff and defendant "equally" divided their marital property as part of the 1984 judgment. Defendant is correct that there appears to be no evidence in the record that supports a description of the distribution as "equal" (in the sense of half to one party and half to the other); however, aside from this inaccurate adverb, the rest of the finding of fact is supported by the evidence.

Defendant's challenge to finding of fact 16 asserts that no evidence exists to support plaintiff's expert's (Foster Shriner, CPA) discovery responses about the amount of defendant's discretionary income. However, later in his brief, defendant concedes that "[t]he information contained in finding of fact #16 is from Mr. Shriner's testimony." Defendant's argument therefore seems to be questioning not the existence but rather the validity of the evidence to support finding of fact 16. As we have previously held, "findings of fact are conclusive on appeal if there is evidence to support them, even though evidence may sustain findings to the contrary." *Cox v. Cox*, 33 N.C. App. 73, 75, 234 S.E.2d 189, 190 (1977). Since competent evidence

in support of finding of fact 16 was presented to the court, this finding is not in error.

Defendant challenges finding of fact 22 on the basis that it does not accurately represent the evidence. Finding 22 states that defendant's 2008 annual income will total a minimum of $195,032.00: $24,129.00 from Social Security benefits, $47,883 from his Met Life annuity, and $123,000.00 in payments from his retirement distribution. Defendant testified to the existence and exact amounts of each of these payments, and as such, there is no error in the trial court's determination of his annual income in finding of fact 22.

Defendant next challenges finding of fact 30, which states that he is under no legal obligation to provide support for his adult son, and therefore the mortgage payments that defendant makes on the condominium his son lives in should not be considered in defendant's reasonable monthly expenses. Defendant testified that he and his wife bought the property to give his son a place to live. However, no evidence was presented to show that defendant was under any legal obligation to do so. As the support of his adult son is a discretionary expense, the trial court did not err in finding that the mortgage payment and condominium fee should not be considered in defendant's reasonable monthly expenses.

Finding of fact 32 states that the appraised value of defendant's property on Abingdon Way was $1,419,500.00. Plaintiff's appraisal value as presented to the court was actually $1,417,500.00, and the house in fact sold for $1,250,000.00. As above, defendant is correct that this finding of fact reflects a slight error in compiling the evidence presented; and, again, this finding of fact is correct with the exception of what is, essentially, a typo.

Defendant next challenges finding of fact 40, which states that Magic Mountain Press, a publishing company established by defendant and his current wife, has lost money all but one year of its existence, and that those losses are funded solely by defendant and his stated income. Defendant's wife's testimony adequately support these assertions, and as such, this finding is supported by competent evidence.

Defendant next asserts that finding of fact 42, which states that defendant has sold a boat, two cars, and a time share in Hilton Head, is not "an accurate statement" of his downsizing efforts. Defendant explicitly testified to each of these facts, and his testimony is competent evidence to support the finding.

Defendant next challenges finding of fact 44, which is a recitation of defendant's current assets and liabilities. As the finding specifically states that defendant's net worth was determined "based upon the testimony of the Defendant and Foster Shriner, CPA, Plaintiff's expert, and the evidence presented," we again find the defendant's challenge to be to the validity of the evidence, rather than to its existence. As such, this assignment of error is overruled.

Defendant next challenges finding of fact 48, which states that plaintiff received unemployment benefits from December 2002 until 2004. Specifically, he argues that the finding of fact is in error because it does not specify the exact amount of benefits she received, a detail that defendant asserts renders the finding "not an accurate statement of the evidence[.]" The trial court's failure to provide defendant's desired level of specificity in its findings of fact—findings that are so clearly supported by the evidence that defendant cites them in his own brief—does not constitute an error by the trial court. This assignment of error is overruled.

Defendant next challenges finding of fact 52, which states that plaintiff's employment income will be lower in 2008 than in previous years. Defendant states that the reasons given for the lower income by the trial court are not an accurate statement of the evidence. However, each portion of finding of fact 52 was testified to by plaintiff, with little contradictory evidence presented by defendant. The trial court did not err by basing this finding of fact on the evidence.

Defendant next challenges findings of fact 58 and 59, which summarize plaintiff's living expenses. Defendant's sole argument on this point is that the trial court erred in finding that a mortgage payment of $1,886.00 is "consistent with the marital standard of living." Defendant does not elaborate on this argument further, and we decline to construct an argument for him on the point.

Defendant next challenges three of the lettered subsections of finding of fact 60, which recites various items of evidence regarding plaintiff's current expenses. Subsection g states that plaintiff lives in the former marital home and has done so for thirty-six years, and that a "significant portion" of her monthly expenses comes from her housing costs. Defendant acknowledges that this is an "accurate statement of the evidence as to what the Plaintiff has done," but disputes that such an amount is "reasonable." As the finding of fact does not characterize the expenses as "reasonable," this argument is irrelevant. Next, defendant challenges the portion of subsection i that states that the balance due

on plaintiff's home equity line of credit is approximately $46,814.00, and that plaintiff "has consistently paid $1,000 a month toward reducing the balance of the equity line." Defendant argues that plaintiff testified that she was going to receive $30,000.00 credit toward that line, reducing it to $16,000.00. Plaintiff in fact testified that she *hoped* to be able to put that money toward the line of credit. Further, we note that, again, defendant does not argue that this finding of fact is incorrect, but rather that it does not contain all the information he would prefer it included; this, again, does not constitute error. Finally, defendant challenges subsection k's finding that plaintiff needs $300.00 per month to maintain the home. Defendant's sole support for his argument that this is incorrect comes from one line from plaintiff's testimony, namely: "I don't have a lot of maintenance for the home." Defendant does not address the specific figures the trial court accurately lays out in this finding of fact that support the $300.00 a month figure, or suggest that evidence does not support those figures. As such, we overrule this assignment of error.

Defendant next challenges finding of fact 65, which summarizes various pieces of testimony by Foster Shriner, plaintiff's expert. As before, however, plaintiff does not argue that the finding of fact is not supported by competent evidence—indeed, he recites the relevant testimony in his brief—but instead challenges the validity of the evidence. As before, we overrule this assignment of error.

Finally, defendant's challenges to findings of fact 64, 67, 68, 69, 70, and 72 and conclusions of law 83, 84, and 85 are based on this Court holding that previous findings of fact are invalid. As we have declined to do so, these assignments of error are overruled.

## II. Attorneys' Fees

[2] Defendant argues that the trial court erred when it concluded that plaintiff was entitled to attorneys' fees because no statutory authority exists for the award. On the contrary, according to N.C. Gen. Stat. § 50-16.4, a court may award attorneys' fees to the dependent spouse when "a dependent spouse would be entitled to alimony . . . ." N.C. Gen. Stat. § 50-16.4 (2009). Further, "an award of counsel fees is appropriate whenever it is shown that the spouse is, in fact, dependent, is entitled to the relief demanded, and is without sufficient means whereon to subsist during the prosecution and defray the necessary expenses thereof." *Fungaroli v. Fungaroli*, 53 N.C. App. 270, 273, 280 S.E.2d 787, 790 (1981). This also extends to appeals in which the supporting spouse is the appellant. *Id.* In this case, plaintiff is the dependent spouse,

entitled to a modification of alimony, and she does not have sufficient means to defray necessary expenses as her current expenses outweigh her income. Accordingly, the trial court was correct to award attorney's fees to plaintiff.

## III. Expert Witness Fees

[3] Defendant also argues that the trial court erred when it concluded that plaintiff was entitled to expert witness fees. Plaintiff concedes that her expert was not subpoenaed to testify and that the court could not award expert witness fees for his testimony. It is also important to note there is no statutory authority in N.C. Gen. Stat. § 50-16.4 for the imposition of expert fees. Accordingly, we hold that the trial court committed error.

## IV. Remaining Portions of the 2008 Order

Defendant also argues that the trial court erred when it decreed that all remaining portions of the 21 November 2008 order remained in full force and effect. Specifically, defendant claims that finding of fact 6 is not supported by evidence. However, finding of fact 6 is supported by the testimony of plaintiff's expert, who stated that the cash surrender value could be used to pay the premiums. Further, the life insurance policy is necessary to ensure the alimony payments to plaintiff if defendant were to pass away. Accordingly, we affirm.

## V. Conclusion

We reverse the trial court's order as it concerns expert witness fees, but affirm in all other regards.

Reversed in part, affirmed in part.

Judges BRYANT and ERVIN concur.